[No. A105444. First Dist., Div. Five. Nov. 30, 2004.]

ANTHONY CADLO et al., Plaintiffs and Appellants, v.
OWENS-ILLINOIS, INC., Defendant and Respondent.

## COUNSEL

Brayton & Purcell, Alan R. Brayton, Gilbert L. Purcell, Lloyd F. LeRoy and David Polin for Plaintiffs and Appellants.

Morgenstein & Jubelirer, Jean L. Bertrand, Shawn D. Parrish and Alex P. Catalona for Defendant and Respondent.

## OPINION

**JONES, P. J.**—Plaintiffs Anthony and Maxlyn Cadlo appeal a summary judgment in favor of defendant Owens-Illinois, Inc., in their action for personal injuries and loss of consortium based on Anthony Cadlo's exposure to Kaylo, an insulation product containing asbestos once made by Owens-Illinois. The Cadlos contend the trial court erred in sustaining Owens-Illinois's demurrer to their causes of action for fraud, deceit, and concert of action. They also contend there are triable issues of fact regarding design defects in Kaylo.

We conclude that Owens-Illinois's historic role in the design, manufacture and marketing of Kaylo will not support plaintiffs' liability claims against Owens-Illinois in the absence of any allegation or evidence that Owens-Illinois had an actual connection with the design, manufacture or distribution of the asbestos to which Anthony Cadlo was exposed.

BACKGROUND

*Facts*

Owens-Illinois began developing Kaylo in the 1930's and placed it on the market in 1943. In 1958 Owens-Illinois sold its Kaylo division to Owens-Corning Fiberglas Corporation (OCF). With the sale Owens-Illinois ceased all manufacture, sale, and distribution of Kaylo.

Anthony Cadlo was born in December 1944. He served as a machinist's mate in the United States Navy aboard the *USS Black* from January 1965 to June 1968. While working on the *USS Black* he was exposed to asbestos insulation, some of which may have been Kaylo. It is undisputed that any Kaylo to which he was exposed was manufactured only by OCF, not by Owens-Illinois.

The Cadlos married in May 1999. Anthony Cadlo was diagnosed with mesothelioma in July 2002, and stopped working in August 2002 because of his disease.

*Procedural History*

The Cadlos' original complaint, filed in September 2002 against, inter alia, Owens-Illinois, alleged negligence, strict liability, multiple intentional torts, and loss of consortium.

As the Cadlos' complaint was ultimately amended, their 14th cause of action for fraud and deceit (concealment) alleged: Owens-Illinois knew of and intentionally concealed the hazardous nature of Kaylo throughout the period it manufactured Kaylo, and approved and assisted Kaylo's purchaser, OCF, in continuing to conceal Kaylo's hazards. OCF began placing inadequate cautionary labels on Kaylo products in 1966. Owens-Illinois had an obligation to disclose the hazardous nature of Kaylo to the consuming public. Anthony Cadlo reasonably relied on Owens-Illinois's concealment of Kaylo's hazardous nature and its representations that Kaylo was safe and therefore took no precautions to avoid Kaylo dust.

The Cadlos' 15th cause of action for fraud and deceit/negligent misrepresentation alleged: After OCF purchased Kaylo, OCF continued to publish in its advertising and promotional literature the same false and misleading representations concerning the safety and nontoxic nature of Kaylo as used by Owens-Illinois before it sold Kaylo. Owens-Illinois knew the representations were false and intended the public to rely on them to purchase and use Kaylo products. Anthony Cadlo did so rely on these false representations.

The Cadlos' 16th cause of action for concert of action alleged: Between 1953 and 1958 Owens-Illinois and OCF had a contract whereby OCF sold and distributed Kaylo made by Owens-Illinois. Both companies were aware during this period that exposure to insulation products containing asbestos posed a serious health risk. Owens-Illinois approved OCF's misrepresentations that Kaylo was nontoxic and safe to use without precautionary measures. It approved OCF's failure to warn of the known hazards of Kaylo when put to its intended use. Owens-Illinois and OCF agreed to the fraudulent concealment of Kaylo's hazardous qualities and agreed not to warn

purchasers during the course of their distribution agreement. The concealment and misrepresentation of Kaylo's hazards and the failure to warn about its hazards resulted in the sale of Kaylo products, and the perpetuation of unsafe installation, handling and use of Kaylo, all of which caused Anthony Cadlo to be exposed to and injured from his exposure to Kaylo dust.

Owens-Illinois demurred to the 14th, 15th, and 16th causes of action on the grounds they stated legal conclusions and failed to state facts sufficient and with requisite particularity to create causes of action. Its demurrer was sustained without leave to amend. The trial court noted that the Cadlos had twice failed to plead facts sufficient to constitute these three causes of action with the required specificity for pleading misrepresentation and had not demonstrated an ability to plead the elements of these causes of action if granted leave to amend.

After ruling on the demurrer, the trial court heard Owens-Illinois earlier filed motion for summary judgment on the remaining causes of action asserting liability under theories of negligence and product defect. The motion was made on the grounds there were no triable issues of fact to support Anthony Cadlo's claim that he was exposed to a product for which Owens-Illinois was responsible, or that any Owens-Illinois product was any factor in contributing to his injuries.

The Cadlos opposed the motion on the grounds Owens-Illinois failed to meet its burden of negating strict liability for design defect, negligence for failure to warn, and fraud based on "fraud on the market" or "privity." Alternatively, they opposed the motion on the grounds there were triable issues of fact regarding Owens-Illinois's cooperative work with OCF to market Kaylo, its failure to warn, and its fraudulent misrepresentations and concealment.

The trial court concluded there were no disputed issues of material fact and Owens-Illinois was entitled to judgment as a matter of law.

## DISCUSSION

### I. *Demurrer*

The Cadlos contend the trial court erred in sustaining Owens-Illinois's demurrer to their 14th, 15th, and 16th causes of action for fraud, negligent misrepresentation, and concert of action because the facts pled do not preclude these causes of action, and fraud was pled with adequate particularity.

### a. *Standard of Review*

■ In reviewing the sustaining of a demurrer, an appellate court treats the demurrer as admitting all material facts properly pled and matters subject to judicial notice, but not deductions, contentions, or conclusions of law or fact. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) We also read the complaint as a whole and its parts in context, giving it a reasonable interpretation. (*Ibid.*) When a demurrer is sustained, we determine if the complaint states facts sufficient to constitute a cause of action. When it is sustained without leave to amend, we decide if there is a reasonable possibility that the defect can be cured by amendment. If so, the trial court abused its discretion, and the judgment is reversed. The plaintiff bears the burden of proving the reasonable possibility of cure. (*Ibid.*)

### b. *Fraud and Negligent Misrepresentation*

■ The well-known elements of a cause of action for fraud are: (1) a misrepresentation, which includes a concealment or nondisclosure; (2) knowledge of the falsity of the misrepresentation, i.e., scienter; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damages. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173 [132 Cal.Rptr.2d 490, 65 P.3d 1255] (*Small*).) The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance. (*Ibid.*) In both causes of action, the plaintiff must plead that he or she actually relied on the misrepresentation. (*Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1088–1089 & fn. 2 [23 Cal.Rptr.2d 101, 858 P.2d 568] (*Mirkin*).)

■ Each element in a cause of action for fraud or negligent misrepresentation must be factually and specifically alleged. (*Small, supra,* 30 Cal.4th at p. 184.) The policy of liberal construction of pleadings is not generally invoked to sustain a misrepresentation pleading defective in any material respect. (*Ibid.*) Thus, the mere assertion of "reliance" is insufficient. The plaintiff must allege the specifics of his or her reliance on the misrepresentation to show a bona fide claim of actual reliance. (*Ibid.*)

■ Actual reliance occurs when the defendant's misrepresentation is an immediate cause of the plaintiff's conduct, altering his legal relations, and when, absent such representation, the plaintiff would not, in all reasonable probability, have entered into the transaction. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 976 [64 Cal.Rptr.2d 843, 938 P.2d 903].) For pleading purposes, the Cadlos satisfactorily alleged that Owens-Illinois knowingly misrepresented that Kaylo was a safe product both by promoting it

as "non-irritating to the skin and non-toxic" and concealing its hazardous nature. However, the Cadlos have not alleged that Anthony Cadlo was actually aware of, or was reassured by and relied on this misrepresentation when undertaking work in the presence of Kaylo dust.

Furthermore, the Cadlos have not demonstrated how they could make such a showing were they granted leave to amend. According to the undisputed evidence discovered prior to the summary judgment motion in this case, Owens-Illinois ended all association with Kaylo when it sold its Kaylo division in 1958. Anthony Cadlo was 13 1/2 years old at the time, and, as the Cadlos themselves acknowledge, they have never alleged that, as a boy, Anthony Cadlo saw ads for Owens-Illinois's Kaylo and then "went out and bought some." After 1958, Owens-Illinois made no representations about Kaylo, false or otherwise. Cadlo's first exposure to Kaylo was in 1965, and the Kaylo to which he was exposed was manufactured by OCF. However, the Cadlos have not alleged that Anthony Cadlo was aware of, or was reassured by and relied on this misrepresentation when undertaking work in the presence of Kaylo dust.

The Cadlos rely on the Restatement Second of Torts, section 533, to support their argument that they have alleged sufficient causes of action for fraud and negligent misrepresentation under the indirect communication doctrine. This section states: "The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved." (*Ibid.*)

■ As *Mirkin, supra*, 5 Cal.4th at page 1096 observes, a plaintiff who hears a misrepresentation indirectly must still show justifiable reliance on it. The Cadlos have not alleged that Owens-Illinois made a misrepresentation about Kaylo's safety to a third party, who then communicated the misrepresentation to Anthony Cadlo, let alone alleged that Cadlo relied on that indirect communication.

*Mirkin* also makes clear that the cases used by the Cadlos as examples of actionable indirect communication are distinguishable. In those cases the maker of the misrepresentation reasonably foresaw that the intermediary would repeat the misrepresentation to another person, e.g., car dealer to used car dealer to car buyer, or the intermediary acted in an agency capacity, e.g., pharmaceutical company to doctor to patient. (*Mirkin, supra*, 5 Cal.4th at pp. 1096–1098; see *Barnhouse v. City of Pinole* (1982) 133 Cal.App.3d 171,

191 [183 Cal.Rptr. 881]; *Varwig v. Anderson-Behel Porsche/Audi, Inc.* (1977) 74 Cal.App.3d 578, 581 [141 Cal.Rptr. 539]; *Toole v. Richardson-Merrell Inc.* (1967) 251 Cal.App.2d 689, 707 [60 Cal.Rptr. 398].) The Cadlos pleaded no facts to show that Owens-Illinois made a misrepresentation about OCF's Kaylo (the only Kaylo to which Anthony Cadlo was exposed) to any third party, and reasonably foresaw that the third party would repeat the misrepresentation to Anthony Cadlo's employer, the Navy, thereby exposing Mr. Cadlo to OCF's Kaylo.

### c. *Concert of Action*

■ Concert of action is a theory of group liability. (*Chavers v. Gatke Corp.* (2003) 107 Cal.App.4th 606, 616 [131 Cal.Rptr.2d 198] (*Chavers*).) It may be used to impose liability on a person who did not personally cause the harm to plaintiff, but whose " '[a]dvice or encouragement to act operates as a moral support to a tortfeasor[,] and if the act encouraged is known to be tortious[,] it has the same effect upon the liability of the adviser as participation or physical assistance. If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act.' " (*Id.* at p. 617, quoting Rest.2d Torts, § 876, com. to cl. b.)

In *Chavers*, an auto mechanic sought damages for mesothelioma caused by inhalation of asbestos fibers in brake shoes. (*Chavers, supra,* 107 Cal.App.4th at p. 609.) He conceded he could not prove that he had ever used or worked with brake shoes manufactured by defendant brake shoe manufacturer Gatke Corporation. (*Id.* at p. 610.) Nevertheless, he argued that Gatke Corporation should be liable because it was one of numerous manufacturers of asbestos-containing products who had contributed in the 1930's to financing a private research laboratory to study the health effects of asbestos on people who worked on or with it. (*Ibid.*) The laboratory eventually reported to the contributing manufacturers that asbestos exposure could be seriously harmful, but this information was not made public for many years. (*Id.* at p. 610.)

*Chavers* held, as a matter of law, that the trial court did not err in refusing to instruct on such a participation theory. (*Chavers, supra,* 107 Cal.App.4th at p. 609.) It relied in large part on *Sindell v. Abbott Laboratories* (1980) 26 Cal.3d 588 [163 Cal.Rptr. 132, 607 P.2d 924], which rejected a "concert of action" theory of liability for producers of the synthetic hormone DES when the plaintiff could not identify the manufacturer of the specific DES that caused her injury. (*Chavers, supra,* at pp. 616–617.) "Applying a concert of action theory of collective liability in such industrywide circumstances 'would expand the [concert of action] doctrine far beyond its intended scope and would render virtually any manufacturer liable for the defective products

of an entire industry, even if it could be demonstrated that the product which caused the injury was not made by the defendant.'[]" (*Id.* at p. 617, quoting *Sindell, supra,* 26 Cal.3d at p. 605.)

The Cadlos allege that during the period 1953 to 1958 when the advertising and promotion of Kaylo was done pursuant to the Owens-Illinois/OCF 1953–1958 sales and distribution agreement, OCF, with Owens-Illinois's approval and assistance, marketed Kaylo by falsely representing its safe use and concealing its hazards. These allegations would arguably state a "concert of action" cause of action had Anthony Cadlo been injured by the Kaylo manufactured by Owens-Illinois during those years.[1] However, like the *Chavers* plaintiff who conceded he could not prove that brake shoes manufactured by the named defendant caused his injury, the Cadlos acknowledge that Kaylo manufactured by Owens-Illinois did not cause Anthony Cadlo's injuries. Nor have the Cadlos alleged any facts that Owens-Illinois continued to encourage and advise OCF to make false representations about Kaylo after Owens-Illinois sold its Kaylo division to OCF in 1958. After 1958 it was OCF which engaged in the alleged concealment and misrepresentation regarding a product OCF manufactured. That the methods of doing so were the same as those originally developed by Owens-Illinois does not support a "concert of action" cause of action as to Owens-Illinois.

## II.  *Summary Judgment*

The Cadlos contend the court erred in granting summary judgment on the remaining causes of action because Owens-Illinois's separate statement of undisputed material facts did not assert any facts tending to negate design defect liability. Alternatively, they contend there are triable issues of fact regarding design defect.

### a.  *Standard of Review*

■    Motions for summary judgment are properly granted if all papers submitted show there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must negate a necessary element of each of the plaintiff's causes of action or establish a complete defense thereto. (Code Civ. Proc., § 437c, subd. (n); *McManis v. San Diego Postal Credit Union* (1998) 61 Cal.App.4th 547, 555 [71 Cal.Rptr.2d 617].) Once the defendant makes such a prima facie showing, the

[1] Of course, in such a factual scenario a cause of action for "concert of action" would be essentially superfluous, because such facts would support standard product liability causes of action, e.g., negligence, strict liability, against Owens-Illinois as manufacturer and OCF as distributor of Kaylo.

burden shifts to the plaintiff to show that a triable issue of material fact exists within the framework of the issues as fixed by the pleading. (Code Civ. Proc., § 437c, subd. (*o*)(2); *Lowe v. California League of Prof. Baseball* (1997) 56 Cal.App.4th 112, 122 [65 Cal.Rptr.2d 105] (*Lowe*).)

■ Summary judgments are reviewed de novo, pursuant to the same statutory procedure followed in the trial court. (*Lowe, supra,* 56 Cal.App.4th at p. 121; *Camp v. Jeffer, Mangels, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 629 [41 Cal.Rptr.2d 329].)

### b. *Separate Statement Requirement*

■ A party moving for summary judgment is required to support its motion with a separate statement that sets forth plainly and concisely the material facts the moving party contends are undisputed. (Code Civ. Proc., § 437c, subd. (b)(1).) Each material fact must refer to the supporting evidence. A court has discretion to deny the motion for failure to comply with the separate statement requirement. (Code Civ. Proc., § 437c, subd. (b)(1).)

Owens-Illinois's statement complied with the statutory requirement. It based its motion on the absence of any connection between it and the Kaylo that allegedly injured Anthony Cadlo, and its statement referred to the evidence to support its lack of any connection. In so doing it met its burden of showing that the Cadlos could not establish at least one element of their causes of action, i.e., that Owens-Illinois's product caused Anthony Cadlo's injury. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 [107 Cal.Rptr.2d 841, 24 P.3d 493].) Owens-Illinois was not required at that stage of the proceedings to assert as well facts specifically negating liability for design defects. Rather, the burden then shifted to the Cadlos to present evidence that Owens-Illinois was liable under a design defect theory. The trial court did not abuse its discretion by not denying the motion due to an inadequate separate statement.

### c. *Product Liability*

■ To establish a defendant's liability for injuries caused by a product, the plaintiff must show, at least, that he was exposed to the defendant's product. (*Dumin v. Owens-Corning Fiberglas Corp.* (1994) 28 Cal.App.4th 650, 655 [33 Cal.Rptr.2d 702].) Here, it is undisputed that Anthony Cadlo could not have come into contact with Owens-Illinois's product, Kaylo, because his first exposure to Kaylo was 1965, seven years after Owens-Illinois had ceased all affiliation with Kaylo.

The Cadlos argue that there are nevertheless triable issues of fact as to Owens-Illinois's liability for the defective design of Kaylo. Their argument

relies on *Fortman v. Hemco, Inc.* (1989) 211 Cal.App.3d 241 [259 Cal.Rptr. 311] (*Fortman*). The *Fortman* plaintiff was injured when she was ejected from a jeep after inadvertently unlatching its passenger door while the car was in motion. (*Id.* at p. 246.) The door was part of a fiberglass jeep top sold to jeep owners as an after-market product. (*Id.* at pp. 246–247.) Alleging the door was defectively designed, she brought a strict liability action against, inter alia, defendant Hemco, the company that made the fiberglass mold used to cast the jeep top. (*Id.* at p. 249.) Hemco made the mold from a wooden prototype built by the company that actually manufactured the fiberglass jeep tops. It sold the mold for $2,500 to that manufacturing company before the accident that was the subject of the lawsuit. (*Id.* at pp. 247, 248.) A jury found Hemco 25 percent liable for the plaintiff's injuries. (*Id.* at p. 250.)

On appeal Hemco contended that its role in the manufacturing process that resulted in the defective door was insufficient to warrant imposition of strict liability. (*Fortman, supra,* 211 Cal.App.3d at p. 250.) The Court of Appeal concluded Hemco could be liable because it was part of the overall manufacturing enterprise, a " 'link in the chain' " by which the defectively designed door reached the ultimate consumer. (*Id.* at p. 251.) As it elaborated, the fiberglass jeep top could not be made without a fiberglass mold. Hemco was in the business of manufacturing fiberglass molds; it agreed to make the mold for the jeep top manufacturer; and it took an active part in the design of the wooden prototype from which the mold was made. The door in the wooden prototype contained the design defect that caused the plaintiff's injury, and Hemco incorporated that design defect into the mold. (*Id.* at p. 252.) Thus, its role was not random or incidental. Without Hemco's participation, the company that manufactured the fiberglass jeep top could not have turned its concept of a fiberglass jeep top into a product. (*Id.* at p. 253.)

*Fortman* is not factually analogous to the present case. Owens-Illinois may have designed the original Kaylo, but the Cadlos offered no evidence that Owens-Illinois was the designer of the Kaylo sold by OCF during the time of Anthony Cadlo's exposure. Nor was there evidence that Owens-Illinois was the designer of an integral element in the manufacture of another product, by a different company, without which OCF's Kaylo could have been produced. The Cadlos presented no evidence that after OCF bought Kaylo, Owens-Illinois played any role in the design, manufacture, distribution, or marketing of OCF's Kaylo.

██    The purpose of imposing strict liability " 'is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market. . . .' " (*Price v. Shell Oil Co.* (1970) 2 Cal.3d 245, 251 [85 Cal.Rptr. 178, 466 P.2d 722].) Therefore, a continuous course of business is a necessary condition for application of the rule. (*Id.*

at p. 253; see also *Peterson v. Superior Court* (1995) 10 Cal.4th 1185, 1207 [43 Cal.Rptr.2d 836, 899 P.2d 905].) Owens-Illinois had had no business association with, direct or indirect financial interest in, or control over Kaylo for seven years by the time Anthony Cadlo was exposed to OCF's Kaylo. (See *Bay Summit Community Assn. v. Shell Oil Co.* (1996) 51 Cal.App.4th 762, 776 [59 Cal.Rptr.2d 322].) Because Owens-Illinois was not "an integral part of the overall producing and marketing enterprise" of OCF's Kaylo (*Vandermark v. Ford Motor Co.* (1964) 61 Cal.2d 256, 262 [37 Cal.Rptr. 896, 391 P.2d 168]), it was not strictly liable to plaintiffs as a matter of law and was entitled to summary judgment.

## DISPOSITION

The judgment is affirmed.

Simons, J., and Gemello, J., concurred.

On December 30, 2004, the opinion was modified to read as printed above.