Filed 5/28/15  Kalicki v. JPMorgan Chanse Bank CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JAN KALICKI, et al.,<br><br>　　Plaintiffs and Appellants,<br><br>　　v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>　　Defendant and Respondent. | D065471<br><br><br>(Super. Ct. No. 37-2013-0039651-CU-BC-NC) |


APPEAL from a judgment of the Superior Court of San Diego County, Robert Dahlquist, Judge.  Affirmed.

Ghods Law Firm, Mohammed K. Ghods and William A. Stahr; Schiffer & Buus, William L. Buus and Eric M. Schiffer, for Plaintiffs and Appellants.

Parker Ibrahim & Berg, John M. Sorich and Jenny L. Merris; AlvaradoSmith and S. Christopher Yoo, for Defendant and Respondent.

Plaintiffs Jan Kalicki and Rosalind Jones-Kalicki sued JPMorgan Chase Bank, N.A. (Chase) asserting claims relating to a secured loan on their home.  Plaintiffs prevailed in part, obtaining a judgment cancelling certain documents recorded and/or

executed by Chase. Shortly after, they brought a second lawsuit against Chase (the action at issue here) reasserting many of the same allegations, but also seeking monetary damages and adding new facts that allegedly came to light shortly before the prior judgment was entered. The court sustained Chase's demurrer without leave to amend on res judicata principles, and entered judgment in Chase's favor.

Plaintiffs appeal from the second judgment. We conclude plaintiffs' claims are barred by res judicata and collateral estoppel doctrines. To the extent plaintiffs have alleged certain "new" facts not encompassed within these doctrines, these factual allegations do not support a viable cause of action under California law. Plaintiffs have not shown they can amend their complaint to state a valid claim. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

We summarize the facts based on the complaint's factual allegations and the matters of which we may properly take judicial notice. (See *Crowley v. Katleman* (1994) 8 Cal.4th 666, 672, fn. 2.)

*First Action*

In 1998, plaintiffs executed a $375,000 promissory note secured by a deed of trust on their San Marcos home (the 1998 Note). Headlands Mortgage Company was the originating lender and Washington Mutual Bank (WaMu) became the loan servicer. In 2008, WaMu foreclosed on the property, but then rescinded the foreclosure because it was "conducted in error." Shortly after, WaMu was placed into receivership and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver. Chase purchased

2

WaMu assets and assumed certain of its liabilities under a written agreement with the FDIC (Assumption Agreement).

In 2009, plaintiffs sued WaMu alleging that WaMu's foreclosure was wrongful (First Action). In early 2010, the trial court granted Chase's motion to intervene in the lawsuit, as a claimed successor to WaMu.

In November 2011, plaintiffs amended their complaint to add Chase as a defendant. They alleged Chase was liable for WaMu's wrongful foreclosure based on Chase's assuming WaMu's liabilities in the Assumption Agreement. They also sought to hold Chase liable for its own wrongful conduct in executing and recording documents reflecting its claim that it now owned the 1998 Note, when the true facts were that Chase did not own this Note. These latter allegations read in part:

> "Chase falsely claims to be the assignee and owner of [the 1998 Note]. . . . Chase does not now nor has it ever owned the Subject Note . . . [¶] . . . . [S]ometime after purchasing WaMu's assets and liabilities . . . Chase discovered that the [1998 Note] was not owned by or assigned to WaMu and that WaMu's purported predecessor in interest (E*Trade) had no record of the [1998 Note] and thus refused to sign an assignment for the Subject Note. . . . [D]espite knowing these facts, . . . Chase nevertheless purposefully designed and set about a deceitful course of conduct calculated to mislead this Court, the public, and the Kalickis into believing that Chase now holds an ownership interest in the [1998 Note] when the facts are to the contrary.

> "[O]n or about February 2, 2009, [Chase] . . . knowingly executed a fraudulent document entitled 'Lost Assignment Affidavit,' which contains several false and misleading statements [suggesting that WaMu had previously obtained an assignment of the 1998 Note]. . . . WaMu's records establish that it did not own the loan evidenced by the Subject Note at the time the FDIC sold WaMu's assets to Defendant Chase. . . . WaMu was merely servicing the loan evidenced by the Subject Note." (Capitalization omitted.)

3

Based on these alleged facts, plaintiffs asserted several causes of action against Chase: (1) wrongful foreclosure and trespass based on WaMu's conduct; (2) quiet title against Chase's adverse claims regarding the 1998 Note; (3) declaratory relief seeking a judicial determination of the parties' rights and obligations regarding "the impact of Assumption Agreement on [plaintiffs'] claims against Chase"; and (4) unfair business practices (Bus. & Prof. Code, § 17200 (§ 17200)) based on Chase's responsibility for WaMu's wrongful conduct *and* Chase's own conduct in wrongfully claiming to own "certain assets (including loans/notes) that its predecessors in interest, FDIC and/or [WaMu], never owned and thus did not assign to Chase."

On the section 17200 claim, plaintiffs alleged that Chase "has taken affirmative steps to masquerade the fact of its non-ownership, even going so far as to prepare, execute and record in the public records one or more 'Lost Assignment Affidavits' that are known to be false and fraudulent and contain false and misleading statements, all in an effort to fraudulently, unfairly and/or unlawfully claim ownership of assets that Chase does not own and is not entitled to."

In March 2012, the FDIC moved to intervene, arguing that under federal law and the Assumption Agreement, plaintiffs had no standing to sue Chase for WaMu's alleged misconduct and these claims must be asserted in a mandatory federal administrative claims process. The next month, the trial court denied the intervention motion, but ruled that plaintiffs' claims against Chase were limited to Chase's own actions after it purchased the WaMu assets.

4

Based on this ruling, at a June 12, 2012 hearing, the court found three of plaintiffs' causes of action were no longer viable because they were based on Chase's claimed derivative liability for WaMu's conduct (wrongful foreclosure, trespass, and declaratory relief). But the court concluded disputes continue to exist on the remaining two claims (quiet title and unfair business practices) regarding whether Chase's post-WaMu conduct created a "cloud on the title." The court found these claims were equitable and would be tried in a nonjury trial.

Three days later, counsel appeared before the court for a trial. The record is unclear as to what occurred on that date. But six days later, on June 21, Sharita Benton, an E*Trade Bank manager, filed a declaration with the court stating: "E*TRADE Bank is the owner" of the 1998 Note, and Chase "is the servicer of the Loan."

About one month later, in July 2012, the parties entered into a written stipulation (Stipulation) to resolve plaintiffs' remaining two claims. The Stipulation stated that Chase had previously claimed to be the owner of the 1998 Note and had executed two documents reflecting this claim (the " 'Lost Assignment Affidavit' " and the " 'Assignment of Deed of Trust' "). The parties requested the court cancel these two documents and enjoin Chase from recording any further document claiming that Chase is the owner of the 1998 Note (unless Chase acquires an interest in the future). The Stipulation also stated that Chase was not precluded from "acting as servicer of the [1998 Note] on behalf of the Loan's legal owner."

Based on the Stipulation, the court (Judge Thomas Nugent) entered a judgment on September 14, 2012, stating:

5

"1. [Plaintiffs] . . . are the owners of [the San Marcos home].

"2. [Chase] does not own that certain loan evidenced by [the 1998 Note and Deed of Trust].

"3. The title to the [San Marcos home] is quieted in favor of Plaintiffs . . . .

"4. The . . . 'Assignment of Deed of Trust' . . . is void and is hereby cancelled. The [document] shall have no force and effect upon the title to the real property . . . .

"5. [The February 2009] . . . 'Lost Assignment Affidavit' . . . is void and is hereby cancelled. The . . . [document] shall have no force and effect upon the title to the real property . . . .

"6. [Chase] is . . . [enjoined] from recording, or causing to be recorded, any false or misleading document which represents that Chase is the owner of the [1998] Note . . . . [Chase] is not precluded by this injunction from recording, or causing to be recorded, in the future any documents that reflect Chase's subsequent lawful acquisition of the loan . . . . *Further, [Chase] . . . is not precluded by this injunction from acting as the servicer for the aforementioned loan*." (Italics added.)

The court dismissed the remaining claims (wrongful foreclosure/trespass/declaratory relief) with prejudice.

Another trial judge (Judge Jacqueline Stern) awarded plaintiffs prevailing party attorney fees ($255,135) against Chase based on a fee provision in the underlying 1998 Note. Chase unsuccessfully appealed from this order. (*Kalicki v. JPMorgan Chase Bank, N.A.* (June 30, 2014) D063508 [nonpub. opn.].) Of relevance here, this court rejected Chase's claims that the fee award was improper to the extent it awarded fees "related to nonparties E*TRADE and FDIC." We explained: "The Kalickis researched

6

and drafted claims against E*TRADE based on Chase's representations that this entity owned the loan. . . ."[1]  (*Ibid.*)

*Current Action*

Six months after the court entered judgment in the First Action, plaintiffs filed a second action (the Current Action) against Chase, Headlands Mortgage, and E*Trade Bank (E*Trade).[2]  The amended complaint alleged this case "arises from the Kalickis' on-going effort to clear the title to [their home] and recover damages for the wrongs that have been committed against them as a result of the Defendants' improper and fraudulent handling of their home mortgage loan . . . ."  Plaintiffs asserted four causes of action against Chase:  (1) slander of title; (2) fraud and conspiracy; (3) declaratory relief; and (4) unfair competition (§ 17200).

In support, plaintiffs alleged the following facts:  Chase wrongfully executed and recorded the Assignment of Deed of Trust document that purported to show Chase owned or held an interest in the 1998 Note.  After plaintiffs incurred substantial litigation expenses and attorney fees in the First Action to successfully invalidate the Assignment and other false documents (including the "Lost Assignment Affidavit"), Chase "abandoned its [ownership] claim . . . ," and instead claimed that "E*Trade owned the Loan and that Chase was and is the loan servicer."  Chase's new claims are "false," and

---

[1]     On our own motion, we take judicial notice of our court's prior opinion on the attorney fees issue.  (Evid. Code, § 452, subd. (d)(1).)

[2]     Because Chase is the sole respondent in this appeal, we limit our discussion to the claims against Chase.

7

the true facts are that E*Trade does not own the 1998 Note and Chase is not the true loan servicer of the loan.

Plaintiffs sought to quiet title to their home against all adverse claims of E*Trade and Chase, recover monetary damages for Chase's false publications that E*Trade is the 1998 Note owner and Chase is the loan servicer, and extinguish the existing deed of trust on their home.

Chase demurred to the amended complaint, arguing the complaint repeats the same allegations from the First Action and it is thus barred by collateral estoppel and res judicata principles. Chase contended plaintiffs' complaint concerns the " 'same claim or controversy' " as in the First Action and/or seeks to relitigate issues regarding title and Chase's alleged misconduct that were raised and adjudicated in the First Action. Chase alternatively argued that plaintiffs failed to state a viable cause of action under California law. Chase requested the court to take judicial notice of the pleadings, motions, and court orders filed in the First Action.

Plaintiffs objected to Chase's judicial notice request, asserting that the court documents from the First Action were irrelevant and were not properly authenticated. Plaintiffs also argued that the res judicata and collateral estoppel doctrines do not apply because when they filed their prior complaint, they were unaware Chase was claiming that E*Trade is the owner of the 1998 Note and that Chase is the servicer of the Note. Plaintiffs stated they did not discover these facts until E*Trade's manager filed the declaration in July 2012, two months before the court entered judgment in the First Action. Plaintiffs further argued that the issues in the First Action and Current Action

8

were not "*identical*," and instead were merely "***related***." Plaintiffs also argued they alleged sufficient facts to state a claim on each of its asserted causes of action.

The court (Judge Robert Dahlquist) granted Chase's judicial notice request and sustained Chase's demurrer without leave to amend. The court found plaintiffs' claims were barred by the res judicata doctrine, stating: "[Chase] and plaintiffs were parties in a prior lawsuit . . . involving the same claims presented in this current lawsuit. The prior lawsuit has been litigated to a final judgment. . . . [T]he prior final judgment not only settles all of the issues that were actually litigated 'but also every issue that might have been raised and litigated in the first action.' "

The court entered final judgment in Chase's favor. Plaintiffs appeal from this judgment.

DISCUSSION

I. *Review Standards*

In reviewing a judgment after a demurrer is sustained without leave to amend, we examine whether the complaint alleged facts sufficient to state a cause of action under any legal theory. (*Koszdin v. State Comp. Ins. Fund* (2010) 186 Cal.App.4th 480, 487.) We assume the truth of the alleged facts and all facts that may be reasonably inferred from the allegations and also consider documents properly subject to judicial notice. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6; *Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1101.) However, we do not assume the truth of contentions, deductions or conclusions of fact or law. (*Ibid.*) We apply a de novo review standard,

9

and are not bound by the court's stated reasons.  (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 433.)

In reviewing the court's refusal to permit an amendment, we are governed by an abuse of discretion standard.  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)  The court abuses its discretion if there is a reasonable possibility an amendment would cure the defects.  (*Ibid.*)  An appellant has the burden to show how the complaint could be amended to state a viable cause of action.  (*Ibid.*)

II. *Legal Principles Governing Res Judicata and Collateral Estoppel Doctrines*

The res judicata and collateral estoppel doctrines bar the relitigation of certain claims and issues.  Under res judicata (claim preclusion), a party is barred from relitigating "the *same* cause of action in a second suit between the same parties or parties in privity with them." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 (*Mycogen*), italics added.)  Under collateral estoppel (issue preclusion), a party is precluded from relitigating an issue already decided in a prior litigation even if the causes of action were different.  (*Ibid.*)  These doctrines " ' "promote judicial economy by minimizing repetitive litigation, . . . prevent inconsistent judgments which undermine the integrity of the judicial system, [and] . . . protect against vexatious litigation." [Citation.]'  [Citation.]" (*Syufy Enterprises v. City of Oakland* (2002) 104 Cal.App.4th 869, 878.)

"In California, the primary right theory determines whether two separate actions concern a single cause of action.  [Citation.]" (*Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133

10

Cal.App.4th 1319, 1327; see *Mycogen, supra*, 28 Cal.4th at p. 904.) This " 'theory . . . provides that a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a beach of that duty. [Citation.]' " (*Mycogen, supra*, 28 Cal.4th at p. 904.) " ' "[T]he primary right is simply the plaintiff's right to be free from the particular injury suffered. [Citation.] It must therefore be distinguished from the legal theory on which liability for that injury is premised: . . . The primary right must also be distinguished from the remedy sought[.]" '. . . [Citation.] ' " '[T]he harm suffered' " ' is ' " 'the significant factor' " ' in defining a primary right." (*Alpha Mechanical*, at p. 1327; see *Friedman Prof. Management Co., Inc. v. Norcal Mutual Ins. Co.* (2004) 120 Cal.App.4th 17, 28.)

Under the claim preclusion doctrine, if the cause of action is the same, the second action is barred even if the parties did not actually litigate an issue raised in the subsequent action. The claim preclusion doctrine bars issues that *could have been* litigated, as long as the later-raised issues constitute the same cause of action involved in the prior proceeding. (*Federation of Hillside & Canyon Associations v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1202.)

Under the issue preclusion doctrine, a party is barred from relitigating an issue in a second action if the identical issue was actually litigated and determined, even if the causes of action are different. (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797.) "The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the

11

same." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342.) The same facts and legal theories need not have been presented on the issue. The doctrine bars relitigation on an issue litigated and decided even if some factual matters or legal theories could have been presented but were not. (*Bridgeford v. Pacific Health Corp.* (2012) 202 Cal.App.4th 1034, 1042; *Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 401-402.)

### III. *Analysis*

#### A. *Most Allegations Barred Under Res Judicata/Collateral Estoppel Doctrines*

A substantial portion of plaintiffs' complaint in the Current Action is based on the same claims and identical issues raised and determined in the First Action—concerning Chase's improper execution and/or recording of false title documents and Chase's alleged liability for WaMu's alleged wrongful foreclosure. Under the collateral estoppel doctrine, plaintiffs are barred from relitigating these same issues. The fact that plaintiffs may be seeking additional remedies (damages) and assert different legal theories (e.g., slander of title, fraud) is of no significance with respect to the application of collateral estoppel. (See *Lucido v. Superior Court, supra*, 51 Cal.3d at p. 342.) Additionally, plaintiffs' claims in the Current Action arose from the same primary rights as those alleged in the First Action—plaintiffs' right to clear and proper title to their home and to prevent wrongful enforcement of their note and deed of trust. Although the causes of action have different labels, plaintiffs sought relief against Chase to recover for their claimed injuries to these same primary rights.

Plaintiffs do not challenge these conclusions. They argue instead that the claim and issue preclusion doctrines are inapplicable here because one portion of the factual

12

allegations in the Current Action—concerning Chase's alleged false assertions that E*Trade is the owner of the Note and that Chase is the servicer of the Note—were not litigated in the prior action and could not have been litigated because Chase did not make these assertions until July 2012, three years after the litigation was filed and shortly before the court entered judgment. Plaintiffs thus maintain they have a right to assert claims in the Current Action based on *this* new alleged wrongful conduct. Plaintiffs rely on *Allied Fire Protection v. Diede Construction, Inc.* (2005) 127 Cal.App.4th 150, which held res judicata did not bar claims based on facts that were not reasonably discovered until after the plaintiff filed the initial complaint, even if those facts were known to the parties during the litigation. (*Id.* at pp. 154-157.)

We need not decide whether *Allied*'s holding can be properly extended to apply to the facts before us. Even assuming *Allied* applies and plaintiffs are entitled to assert their new facts in the Current Action, the trial court's ruling sustaining the demurrer was proper. Chase specifically moved for a demurrer on the alternative ground that the facts do not support the asserted cause of action. Chase's position was correct. As explained below, the alleged "new facts"—concerning Chase's alleged misrepresentation regarding E*Trade's ownership of the 1998 Note and Chase's status as servicer of the loan—do not support any of the causes of actions alleged in the Current Action: (1) slander of title, (2) fraud and conspiracy; (3) declaratory relief, and (4) violation of section 17200.

## B. *Slander of Title*

To properly plead a slander of title claim, a plaintiff must allege an unprivileged false statement that (1) *disparages* another person's interest in land and (2) results in

13

*pecuniary loss*. (*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1030 (*Sumner Hill*); see *M.F. Farming Co. v. Couch Distributing Co., Inc.* (2012) 207 Cal.App.4th 180, 198-200; *Smith v. Commonwealth Land Title Ins. Co.* (1986) 177 Cal.App.3d 625, 630.) "The main thrust of the cause of action is protection from injury to the salability of property [citation], which is ordinarily indicated by the loss of a particular sale, impaired marketability or depreciation in value [citations]." (*Sumner Hill, supra*, at p. 1030.)

Plaintiffs' allegations do not show the requisite pecuniary loss. The sole pecuniary loss identified by plaintiffs is the legal expenses to remove the recorded documents from title. However, those expenses were caused by Chase's actions that were previously litigated in the prior action (regarding the Lost Affidavit Assignment and Assignment of Trust Deed) and thus plaintiffs are barred from recovering these expenses in the Current Action. There are no allegations that after the judgment was entered, Chase recorded or caused to be recorded any document pertaining to its alleged false claim that E*Trade is the owner of the 1998 Note and that Chase is the servicer of the Note.

The alleged new facts also do not satisfy the disparagement element of a slander of title claim, which requires a statement or action that "cast[s] doubt upon the existence or extent of another's interest in land." (*Sumner Hill, supra*, 205 Cal.App.4th at p. 1030.) Plaintiffs' allegation that Chase has falsely "published" its belief that E*Trade is the owner and Chase is the servicer of the 1998 Note cannot be reasonably understood to cast doubt on plaintiffs' interest in their home. Under plaintiffs' own allegations, their property is encumbered by a secured note (the 1998 Note and deed of trust), and there are

14

no allegations this loan has been paid off or that anyone (other than E\*Trade) is claiming entitlement to be paid on the Note. The fact that one entity (instead of another entity) owns the note does not cast doubt on plaintiffs' interest in the property. (See *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 515 (*Jenkins*).)

## C. *Fraud and Conspiracy*

To state a fraud claim, a plaintiff must allege (1) a misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) actual and justifiable reliance; and (5) resulting damage. (*Small v. Fritz Companies, Inc*. (2003) 30 Cal.4th 167, 173.) Unlike the usual rule of liberal interpretation of pleadings, a plaintiff must plead fraud with *particularity,* alleging *specific facts* that establish fraud and each of the other elements. (*Goldrich v. Natural Y Surgical Specialties, Inc.* (1994) 25 Cal.App.4th 772, 782-783; see *Knox v. Dean* (2012) 205 Cal.App.4th 417, 433.)

Plaintiffs do not satisfy this standard. Most important, they do not allege specific facts showing they detrimentally relied on Chase's alleged new false statements pertaining to loan ownership/servicing. To properly plead a fraud claim, "the mere assertion of 'reliance' is insufficient. The plaintiff must allege the specifics of his or her reliance on the misrepresentation to show a bona fide claim of actual reliance." (*Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.) " 'Deception without resulting loss is not actionable fraud. [Citation.] "Whatever form it takes, the injury or damage must not only be distinctly alleged but its causal connection with the reliance on the representations must be shown." [Citation.]' " (*Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 800.)

15

In arguing they adequately alleged detrimental reliance, plaintiffs rely primarily on Chase's alleged wrongful conduct pertaining to the previously recorded Assignment of Deed of Trust document. However, this alleged wrongful conduct was litigated and decided in the First Action. They also cite to paragraph 41 of their amended complaint. In this paragraph, plaintiffs allege that based on Chase's statements regarding ownership and servicing of the 1998 Note, plaintiffs were "forced" to "communicate with and comply" with a demand made by Chase (as servicer of the loan) that plaintiffs show evidence of homeowners' insurance. They attach a July 2012 letter from Chase as the 1998 Note servicer sent during the pendency of the First Action requesting evidence of homeowners' insurance, and stating that Chase will purchase an insurance policy and charge plaintiffs for the policy if this evidence is not shown.

These allegations do not show plaintiffs relied on the alleged false statements to their detriment. The fact that plaintiffs purchased homeowners' insurance is not the result of Chase's alleged false statements. Regardless of who owned the loan, a trustee or beneficiary of a deed of trust has the right to insist that the secured borrower has proper insurance on the property. There is no allegation that plaintiffs were subject to conflicting demands regarding homeowners' insurance or regarding any other obligation under the 1998 Note and deed of trust. Plaintiffs' decision to obtain homeowners' insurance and/or communicate with Chase is not a legally cognizable loss.

We similarly find unavailing plaintiffs' reliance on their general allegations that Chase's "fraudulent activities caused Plaintiffs to suffer . . . loss of earnings and farm production, damage to the Kalickis' Home from a forced deferral of repairs, and

16

emotional distress, mental anguish, and resulting bodily harm." Plaintiffs do not specifically allege, nor is there any reasonable basis for finding, that these alleged damages *resulted from* Chase's publications that E*Trade is the owner of the 1998 Note and that Chase is the servicer of the Note.

Because plaintiffs failed to allege facts establishing the elements of fraud, their conspiracy to commit fraud claim fails as well. (See *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1136 ["no separate tort of civil conspiracy and no action for conspiracy to commit a tort unless the underlying tort is committed and damage results"]; *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1062 [liability for civil conspiracy requires the commission of an underlying tort]; see also *Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 211.)

### D. *Declaratory Relief*

Code of Civil Procedure section 1060 provides that "in cases of actual controversy" a court "may make a binding declaration" of a litigant's rights or duties. (See *Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 647.) "Unless all the allegations of a complaint show that an actual controversy does exist between the parties," the complaint is subject to general demurrer. (*American Mission Army, Inc. v. Lynwood* (1956) 138 Cal.App.2d 817, 819.) Whether an appellant's claim presents an "actual controversy" is a question of law this court reviews de novo. (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 606.)

"Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor." (*Herrera v. Federal National*

17

*Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507.) Thus, a borrower who has an outstanding balance on a secured promissory note generally has no standing to challenge enforcement of the note based on the validity of a lender's assignment of a note or deed of trust. Those disputes must be resolved among the transferors and transferees of the documents. (*Id.* at pp. 1507-1508; *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 85; accord, *Jenkins, supra*, 216 Cal.App.4th at pp. 510-515.)[3]

Under plaintiffs' admitted facts, there was no "actual controversy" between plaintiffs and Chase. Plaintiffs admit the existence of a secured home loan debt. Plaintiffs obtained a judgment declaring that Chase has no ownership interest in this secured loan, but that Chase is not precluded from acting as servicer of the loan. There is no allegation that any other party has come forward claiming ownership of or seeking payment on the 1998 Note; that plaintiffs have been asked to pay more than what they owe; or that any other entity is seeking to act as servicer on the note. Plaintiffs also do not claim Chase has taken any steps to notice a default or to schedule a trustees' sale.

---

[3] Although there is contrary authority on this standing issue (*Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079), most courts have rejected *Glaski*'s analysis and the issue is presently before the California Supreme Court. (See *Yvanova v. New Century Mortgage Corp.*, review granted Aug. 27, 2014, S218973; *Mendoza v. JPMorgan Chase Bank, N.A.*, review granted Nov. 12, 2014, S220675; *Keshtgar v. U.S. Bank, N.A.*, review granted Oct. 1, 2014, S220012.) In any event, as explained below, even if *Glaski* reflects the proper rule, plaintiffs have not stated a cause of action for declaratory relief because there is no current controversy between themselves *and Chase* that is ripe for resolution by the court.

On this record, plaintiffs have not alleged facts to establish the existence of an actual present controversy between themselves and Chase. As a result, they have not established their entitlement to declaratory relief and the trial court properly sustained the demurrer on this cause of action.

### E. *Unfair Competition*

To state a cause of action under section 17200, a plaintiff must establish "*economic injury*," and that this injury "was the result of, i.e., *caused by*, the unfair business practice . . . ." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322; Bus. & Prof. Code, § 17204.)

In asserting their section 17200 cause of action based on Chase's statements that E*Trade is the 1998 Note owner and Chase is the loan servicer, plaintiffs do not allege any resulting economic injury. In their briefs, they claim they suffered economic harm but they identify only the alleged damages resulting from the prior wrongful foreclosure and Chase's prior conduct in executing and recording the title documents. Because this conduct was encompassed within the causes of action alleged in the First Action and was litigated and decided in the prior action, it cannot be the basis for their section 17200 claim in the Current Action.

### F. *Plaintiffs Did Not Meet Burden To Show a Basis for Amendment*

An appellate court must reverse a judgment sustaining a demurrer if there is a reasonable possibility the defect can be cured by amendment. (*Schifando, supra*, 31 Cal.4th at p. 1081.) On appeal, an appellant has the burden of establishing a reasonable possibility of curing a defect by amendment. (*Ibid*.) Plaintiffs did not meet this burden.

19

They were previously given an opportunity to amend the pleading to state a cause of action, but failed to do so. In their appellate briefs, they do not explain with the requisite specificity what facts they could add to their pleading that would support their legal theories.[4]

## DISPOSITION

Judgment affirmed. Appellants to bear respondent's costs on appeal.


HALLER, J.

WE CONCUR:


HUFFMAN, Acting P.J.


AARON, J.

---

[4]    We reject plaintiffs' objection to the trial court and this court taking judicial notice of the documents filed in the First Action. (See Evid. Code, § 452, subd. (d)(1).)