Filed 9/3/15  Howard v. GC Services CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION 2

| | |
|---|---|
| RICHARD HOWARD,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>GC SERVICES, INC.,<br><br>　　　　Defendant and Respondent. | A140351<br><br>(Contra Costa County<br>Super. Ct. No. C11-01552) |

**INTRODUCTION**

Plaintiff Richard Howard sued Defendant GC Services, Inc., an entity that provides debt collection services for Los Angeles County, alleging that defendant had sent him a letter that falsely stated plaintiff owed Los Angeles County Superior Court unadjudicated bail in connection with a red-light camera citation and demanded payment. Plaintiff alleged that various representations in the letter were false and misleading and did not reflect the policies of the Los Angeles Superior Court.  Plaintiff appeals from the trial court's order denying his motion to certify a class of all California residents who had received letters from the defendant containing similar representations.  The trial court ruled that plaintiff failed to meet his burden of demonstrating that common issues predominated, that his claims were typical of the class, and that his attorney was adequate to serve as class counsel.  We affirm.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

A.     *Defendant's Role in Los Angeles' Traffic Enforcement Camera System*

In 2007 and 2008, the County of Los Angeles contracted with a third-party vendor to operate automated traffic enforcement cameras. These cameras photographed vehicles committing red-light violations. The third-party vendor obtained information regarding the vehicle that ran the red light and its registered owner from the California Department of Motor Vehicles (DMV). The responsible law enforcement agency used this information to send out a notice of traffic violation and notice to appear to the registered owner's address. If the court date listed in the notice to appear passed without the driver appearing in court or paying or contesting the traffic fine, the law enforcement agency would label the account as delinquent with Los Angeles County Superior Court (LACSC). LACSC then assessed a $250 delinquency fee to the account, sent the driver a notice of delinquency letter, and referred the account to collections.

Defendant is the County of Los Angeles' collection agency. In 2006, it contracted with the county to "develop a comprehensive court/county collection program to improve enforcement of court collections." Under this contract, the County would refer certain accounts—including "[t]raffic citations where a [driver] fails to appear before being sentenced"—to defendant for collection. Upon receiving information from the County, defendant was required to send "Delinquency Letters" to debtors upon receiving the information from the County. The contract required that the letter identify the defendant, "[i]nform the debtor of the origin of the debt and the current amount owed;" "[a]dvise of the consequences of continued non-compliance, such as wage garnishment, and property seizures"; and "[e]xplain that a debtor with an Infraction/Misdemeanor with Unadjudicated Bail . . . who wishes to dispute the debt must schedule a court appearance."

B.     *Plaintiff's Allegations*

Plaintiff filed this action on July 7, 2011. The fourth amended class action complaint, the operative complaint for our purposes, was filed on September 17, 2012.

On July 12, 2010, plaintiff received a single page letter from defendant that is the focus of this lawsuit. This letter, attached to the fourth amended complaint as Exhibit A, has the words "balance due statement" in bold, capitalized print near the top of the page, and purports to be from GC Services Limited Partnership Collection Agency Division. The letter asserts that plaintiff owes LACSC $680.00 and that this amount "may include multiple citations." It advises plaintiff that his "failure to respond to previous notifications may result in the Los Angeles Superior Court obtaining a civil money judgment against you" and that the "State of California's Department of Motor Vehicles is assisting us in locating you." The letter then states: "You should take this opportunity to contact us immediately . . . . By contacting us at this time to resolve your unpaid bail, you will avoid further methods of collection which may include pursuing a civil money judgment" which would result in "garnishing your wages or other sources of income"; "attaching your bank account"; "filing a lien which will attach to all real property you now own or later acquire in California"; and "all other lawful processes."

Plaintiff alleged that he had never received any prior notification about any citation. He called defendant at the phone number listed in the letter, and a representative informed plaintiff that he had been "cited for running a red light which was captured by camera in Southern California" and the camera had "identified the vehicle and its license plate number." Plaintiff, a resident of Concord, California, told the representative that he had not been in Southern California since 1999, had never received a traffic citation there, and did not own (and never had owned) a car matching the description of the car which allegedly ran the red light.

Plaintiff next contacted the DMV and inquired about the citation. He told the DMV representative that he had never received a citation, a notice to appear in court, or any judgment from a court. He further stated that his ability to register his vehicle had not been made contingent on the payment of any citation and no "points" had been placed on his driving record. Plaintiff alleges that the "DMV could not resolve the issue."

On July 20, 2010, plaintiff, through his attorney, sent defendant a certified letter. Plaintiff's letter (which was not on attorney letterhead and appeared to be signed by him)

3

stated that he had been the victim of identity theft around the time of the alleged red light violation and that "various vehicles were purchased with [his] identifying information." Plaintiff stated he had since been "vindicated by litigation." He wrote that he had never owned the car that allegedly ran the red light, had never received a traffic citation in Southern California, and had not been in Southern California since 1999. Plaintiff never received a response to his letter. According to defendant, however, it closed plaintiff's account and stopped attempting to collect it as a result of plaintiff's letter.

Plaintiff's Fourth Amended Complaint alleges five causes of action: (1) negligence; (2) negligent misrepresentation; (3) fraud; (4) declaratory relief; and (5) unfair business practices under the Unfair Competition Law (UCL). Each cause of action generally alleged that the representations in defendant's letter—namely that the DMV was assisting defendant in locating individuals and that there would be various consequences if the recipient did not respond—were false based on LACSC's policies, and that defendant knew, or should have known, of the falsity of the representations. Plaintiff alleged that where a citation was based on a red-light camera, LACSC "does not deem itself as having jurisdiction and does not allow default judgments, liens, garnishment, levies or other such activity, nor does it report such citations to the DMV either. It appears such may be true in all such cases."

Plaintiff alleged he suffered damage because he was "compelled to contact Defendants, the DMV and an attorney about these matter [sic] and had to pay an attorney for assistance in drafting a letter regarding these baseless accusations. Additionally, he has incurred emotional distress in dealing with this matter." Others in the putative class, he alleged, suffered damage by actually paying the citations. In his declaratory relief cause of action, plaintiff sought a declaration that defendant must refrain from making these representations and a "declaration of rights and duties regarding whether Defendants were debt collecting under the Rosenthal Fair Debt Collections Practices Act."

4

C.      *Plaintiff's Motion for Class Certification*

Plaintiff filed a motion to certify the class on September 28, 2012.[1] Plaintiff sought to certify a class of every "California resident who, on or after July 1, 2007, was the subject of a letter from Defendants regarding a red light camera citation and which represented (a) the Department of Motor Vehicles was assisting defendants in locating them (b) that a balance was due or an amount was owing on such citation and/or (c) that failure to respond to the letter might result in wage garnishment, bank levies, liens or other collection activity set forth in the letter."

Plaintiff argued that defendant had admitted in discovery that thousands of individuals had received letters that contained substantially similar representations to the letter received by plaintiff. He argued, therefore, that each class member had been "subjected to a common course of conduct. The proof of each will be simply based on the terms of those letters and whether they violated law under any of the theories alleged." In support of his certification motion, plaintiff submitted the letter he received from defendant, the letter he sent defendant in response, and a copy of the Notice of Traffic Violation related to the underlying red-light citation. Plaintiff's counsel, Ron Bochner, provided a declaration asserting that he was "experienced in complex litigation" and had been "named class counsel in eight cases, all of which settled or are in the process of settling . . . and two other cases which are pending but have not been certified to date."

On May 7, 2013, defendant filed its opposition to the class certification motion.[2] Defendant argued that common questions of law or fact did not exist because plaintiff's

---

[1] The trial court set the September 28, 2012, deadline for filing the class certification motion at the April 26, 2012, case management conference.

[2] For reasons that are not entirely clear in the record, defendant's opposition was filed eight months after plaintiff's motion. It appears that on September 14, 2012, the parties filed a "Stipulation and Order Extending Time for MTN to Compel." The text of this stipulation is not in the record. In plaintiff's motion for class certification, plaintiff stated that because a "discovery issue remains pending, and for other reasons, the parties stipulated [to extend] the time to bring a Motion to Compel further responses and to

5

theories relied on the adjudication of individual issues such as (1) whether the class member paid the requested balance; (2) whether the class member ran the red light; or (3) whether the individual paid the outstanding balance as a result of defendant's letter. Defendant contended that these individualized determinations meant that its liability, if any, could not be determined on a class-wide basis. Defendant also argued that plaintiff's claims were atypical of those of the purported class because plaintiff had received the letter as a result of alleged identity theft, knew he had not run a red light, and did not pay the requested balance. This was, therefore, another reason to deny class certification.

Defendant also contended that Bochner was inadequate to serve as class counsel. Defendant relied on a finding by a different court in a different case that Bochner had engaged in unethical conduct. In *Lee v. American Agencies* (Alameda County Super. Ct. Case No. RG09477598), the superior court granted American Agencies' motion for summary judgment on debt collection claims raised by a plaintiff represented by Bochner. Subsequently, the court awarded American Agencies its attorneys' fees. The court found that American Agencies had "shown that many of Plaintiffs' allegations and positions taken in this lawsuit were baseless (or put another way, were not 'minimally colorable')." The court further found that when American Agencies had attempted to subpoena certain records, "Plaintiff refused to consent, forcing Defendants to file a motion to obtain credit reporting records, which confirmed that no Defendant had reported the disputed item to any credit agency. Plaintiff's refusal strongly suggests an intent to obstruct, rather than resolve, this litigation. Both this claim and Plaintiff's tactics in litigating the claim were completely meritless." Ultimately, the court stated that the "circumstances in which this case arose are not entirely above suspicion; the manner in which Plaintiff's counsel prosecuted the case is not admirable; and the Court cannot

_____

extend the time for filing class certification briefing and hearing of the class certification motion." The Register of Actions does not reveal when the order approving this stipulation was filed. However, the class certification hearing was repeatedly moved (either as the result of a stipulation or motion by defendant), first from November 30, 2012, to April 16, 2013, then to June 11, 2013, then to July 11, 2013, and finally to August 20, 2013.

find even a minimally colorable claim or position taken by Plaintiff." The court then stated the "evidence overwhelmingly points to the bad faith of [plaintiff's] attorney."

In opposing the request for attorneys' fees, Bochner had included an argument that any attorneys' fee award could not be assessed against *him*. This argument appears to have led the superior court to question whether Bochner had violated the Rules of Professional Conduct. The court concluded its order granting attorneys' fees by writing: "In light of the Court's above findings regarding counsel's conduct of this lawsuit, the Court intends to REPORT Attorney Bochner to the California State Bar for violation of Business & Professions Code section 6068(c). As noted above, the evidence strongly suggests that the tactics and claims giving rise to the fee award are primarily, if not solely, lawyer-driven. Plaintiff has not supplied any declaration in support of her opposition and, indeed, there is no evidence that she is even aware of this Motion. Perhaps most importantly, at some point during these proceedings, Plaintiff's and her attorney's interests clearly diverged. Thus, counsel may also have violated one or more fiduciary and/or ethical duties to his client in the course of litigating the instant motion."[3]

In support of its opposition to class certification, defendant submitted the declaration of Scott Cole, defendant's managing vice president. Cole described how when a red-light camera violation was not contested or paid, the "Superior Court's Information Technology department caused electronic information about such accounts to be sent to GCS's proprietary automated collection system." The information defendant received from LACSC would vary from fine to fine, but generally included "the name of the registered owner of the vehicle involved in the violation . . . , the owner's driver's license number . . . , the owner's date of birth, the owner's address, the amount placed for collection, the balance due, the date of the violation . . . , and the

---

[3] As we discuss below, by the time of the hearing on the class certification motion in this action, Bochner had appealed the award of attorneys' fees and the order was reversed on the ground that plaintiff had asserted at least one colorable claim. (*Lee v. American Agencies* (A133016, A133752, July 2, 2013) 2013 WL 3353895 [nonpub. opn.].) Nonetheless, the Court of Appeal referenced Bochner's "dubious litigation tactics." (*Id.* at p. *10.)

7

license plate number of the vehicle involved." Defendant would not be provided with copies of the documents underlying the traffic violation, such as the notice of violation or notice to appear. Cole stated that during the putative class period, 22,587 California residents received letters "that were in the form of the balance due statement letter sent to plaintiff that sought to collect fines assessed for red-light violations detected by red-light cameras in Los Angeles County." In addition to such letters, Cole stated that defendant employed other collection efforts, such as phone calls and different letters.

On May 28, 2013, plaintiff filed his reply brief in support of class certification. Plaintiff argued that the individual issues identified by defendant did not defeat class certification. His position was that defendant's letter was unlawful because of "Los Angeles Superior Court's refusal to take default judgments in cases where, as here, citizens are cited purely through the use of a technology recording a license plate, not upon direct citation of the driver at the time and place where the incident occurred. That GC failed to know of or take heed of the presumption of innocence as well as Los Angeles Superior Court's policy and practice is the precise point of this case. GC had a duty to assure its representations were true. It did not. If some of the drivers may actually have run a red light, there was not and could not be a determination of the fact at the time the letter was sent. . . . The letter represents GC's uniform policy and practice and illegal effect." For similar reasons, plaintiff argued he was typical of the unnamed class members because he, "like all the class members, received a demand that the full sum of money was due and owing and needed to be paid and that certain collection efforts could take place if he did not respond to the letter. None of this was proper when the citation was by camera match to the vehicle owner . . . as is again shown by the policy of [LACSC] not to take default judgments on such citations." Responding to defendant's argument that Bochner was an inadequate class counsel, plaintiff asserted that the allegations of unprofessional conduct in the *American Agencies* case had "nothing to do with the elements of class certification or an abuse of the class certification procedure and

8

has no application in this case. Indeed, in this case plaintiff has undertaken this entire matter in more than good faith."[4]

Along with his reply brief, plaintiff submitted documents pertaining to LACSC's policies regarding the handling of red-light citations when a defendant fails to appear. Plaintiff submitted two charts from LACSC's "Clerical Authority" standing orders and guidelines. Plaintiff obtained these documents from LACSC pursuant to a subpoena for business records. These documents state that, "[p]ursuant to a County Counsel legal opinion, no failure to appear violation can be entered" on red light camera citations, and the failure to appear is not reported to the DMV. Instead, a $250 civil assessment is added and LACSC's system will "automatically refer case to GC Services for collections."

On August 13, 2013—one week before the class certification hearing—Bochner filed a "Supplemental Brief and Declaration of Ron Bochner in Support Thereof on Class Certification Motion." This declaration attached what Bochner described as "various media reports true and correct copies of which are attached hereto as Exhibit A." Exhibit A consists of unlabeled notes that purport to recount a statement by Mary Hearn, the Director of Public Information for LACSC, and three internet news stories (from the Los Angeles Times website and "dailynews.com") from July 2011, September 2011, and March 2012. Bochner's declaration did not characterize these documents or otherwise make argument from them. These documents, however, generally purport to paraphrase or quote Los Angeles County and LACSC staff for the proposition that LACSC's policy was not to pursue red-light camera citations where the recipient ignored the citation.

In both his reply and supplemental declarations, Bochner recounted his attempt to get LACSC personnel to appear at a deposition to "confirm" the statements made in the news stories. In his reply declaration, Bochner asserted that LACSC had "refused to appear for deposition and confirm the various newspaper stories." He stated that if the

---

[4] In a supporting declaration, Bochner attached an eight-page letter he had sent to the California State Bar in response to the *American Agencies* court's referral to the state bar for unprofessional conduct.

"court desires further evidence on Los Angeles Superior Court's practices and policies, plaintiff asks leave to supplement this brief and produce that evidence once the deposition has been completed." In his August 13, 2013, supplemental brief and declaration, Bochner further detailed his unsuccessful attempts to have an LACSC official attend a deposition. Bochner asked that "if the certification of the class turns on evidence that may be provided by [LACSC], the court allow the certification hearing to be continued to such time as plaintiff is able to obtain such evidence."

D.    *The Trial Court's Ruling*

The hearing on the class certification motion was held on August 20, 2013. In advance of the hearing, the trial court issued a detailed tentative ruling. Following a lengthy hearing, the trial court confirmed its tentative ruling and issued a 12-page order denying plaintiff's motion for class certification.

The court found that plaintiff had identified an ascertainable and sufficiently numerous class. It stated that plaintiff's proposed class definition "includes sufficient common characteristics to identify members of the class. The court also finds the proposed class is sufficiently numerous either at approximately 2,000 as asserted by GCS in its discovery response or at over 22,000 as asserted in the Declaration of Scott Cole filed in opposition to plaintiff's motion for class certification."

The court, however, found that plaintiff had failed to produce sufficient evidence that defendant's liability could be established by common proof such that common issues predominated over individual issues. As to the negligence cause of action, the court noted that "the issue of [defendant's] liability and whether there is a causal link between any breach and damages suffered by the putative class members depends on the determination of individual issues. . . . The only evidence of liability and causation offered in support of plaintiff's motion for class certification is unique to plaintiff's circumstances." As to plaintiff's attempt to establish defendant's liability based on proof of LACSC's policies, the court found this did not meet plaintiff's burden because the "theory is not supported by the evidence submitted in support of plaintiff's motion for class certification."

10

As to the misrepresentation-based causes of action, the court found that the falsity of many of the representations contained in defendant's letter could not be determined by common proof. For example, the court stated: "Plaintiff has failed to cite sufficient evidence that the falsity of these statements is subject to common proof. Plaintiff cites evidence of the falsity of the balance due statement only as it applies to plaintiff. In contrast, whether other class members owed money to LACSC may be true if the person receiving the letter was the driver pictured in the citation and he had failed to appear and/or timely pay the citation." Additionally, the court found that plaintiff had failed to show that the materiality of the representations, and class members' reliance on those representations, was subject to common proof. It stated that a "class member who took any steps to dispute the asserted fine, paid a fine that was not actually owed or suffered any other damages, may have done so for any number of reasons. He may have relied on the red light letter from GCS but he may have also relied on GCS's other collection efforts or taken action in response to prior correspondence from LACSC." As to plaintiff's declaratory relief cause of action, however, the court found that common issues predominated, but only to the extent plaintiff sought a judicial determination that defendant was engaged in debt collection—a claim included in the fourth amended complaint simply in anticipation of a defense defendant may have sought to raise.

The court next found that plaintiff's claims were not typical of the class as to the negligence or misrepresentation causes of action because plaintiff "was neither the driver nor the registered owner of the car subject to the red light camera citation" and he "never received the initial citation from the issuing agency or the notice of violation from the superior court." Instead, plaintiff "was the victim of identity theft and there [was] no evidence other putative class members have suffered similar issues."

The trial court also found that plaintiff had failed to meet his burden of demonstrating that Bochner was qualified to serve as counsel for the class. It found Bochner's declaration in support of class certification had failed to provide any information regarding the size or nature of the class actions for which Bochner had served as class counsel. The court also stated that "Mr. Bochner goes on to say that he

11

has settled all cases in which he was named class counsel and, thus, i[t] can be inferred that he has no experience in bringing such cases to trial. It also appears from plaintiff's pleadings that Mr. Bochner is a sole practitioner and . . . likely has insufficient resources to adequately serve the interests of a large class of individuals." The court then found that "[e]ven if plaintiff had met his burden, the court is concerned with counsel's competence to represent the proposed class" in light of the superior court's finding in the *American Agencies* case. The court stated that this finding "casts serious doubt as to Mr. Bochner's qualifications and ability to competently represent the class here."

Finally, the trial court found that certifying plaintiff's proposed class would not provide the litigants and the court a substantial benefit. It stated that a "class action is not the superior method of obtaining relief where proposed class counsel is not qualified and only a declaratory relief allegation, which may not provide complete relief to the class, appears to qualify for class treatment."

## STANDARD OF REVIEW

We review the order denying class certification for an abuse of discretion. (*Sav-on Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 327 (*Sav-on*); *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1022 (*Brinker*).) " 'Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification.' " (*Sav-on, supra,* 34 Cal.4th at p. 326, quoting *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 (*Linder*).) "[A] trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation].' " (*Linder, supra,* 23 Cal.4th at pp. 435-436.) " 'Any valid pertinent reason stated will be sufficient to uphold the order.' " (*Id.* at p. 436, quoting *Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 656 (*Caro*).)

However, " 'appellate review of orders denying class certification differs from ordinary appellate review. Under ordinary appellate review, we do not address the trial court's reasoning and consider only whether the result was correct. [Citation.] But when denying class certification, the trial court must state its reasons, and we must review those

reasons for correctness. [Citation.] We may only consider the reasons stated by the trial court and must ignore any unexpressed reason that might support the ruling. [Citations.] [¶] We will affirm an order denying class certification if any of the trial court's stated reasons was valid and sufficient to justify the order, and it is supported by substantial evidence. [Citations.]' " (*Mies v. Sephora U.S.A., Inc.* (2015) 234 Cal.App.4th 967, 980, quoting *Knapp v. AT&T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 939.)

## DISCUSSION

Code of Civil Procedure section 382 authorizes class actions "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." The party seeking class certification "bears the burden of establishing the propriety of class certification." (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 922.) "Class certification requires proof (1) of a sufficiently numerous, ascertainable class, (2) of a well-defined community of interest, and (3) that certification will provide substantial benefits to litigants and the courts, i.e., that proceeding as a class is superior to other methods. [Citations.] In turn, the 'community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' " (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089 (*Fireside Bank*), quoting *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470.)

The question of class certification is " 'essentially a procedural one that does not ask whether an action is legally or factually meritorious.' " (*Koval v. Pacific Bell Telephone Co.* (2014) 232 Cal.App.4th 1050, 1057, quoting *Linder*, *supra*, 23 Cal.4th at pp. 439-440.) However, "issues affecting the merits of a case may be enmeshed with class action requirements, such as whether substantially similar questions are common to the class and predominate over individual questions or whether the claims or defenses of the representative plaintiffs are typical of class claims or defenses. [Citations.]" (*Linder*, *supra*, 23 Cal.4th at p. 443.)

13

A.      *Predominance of Common Questions*

Plaintiff contends that the trial court erred in concluding that he had failed to establish the predominance of common questions with respect to his claims.

1.      *Predominance in General*

"Plaintiffs' burden on moving for class certification . . . is not merely to show that some common issues exist, but, rather, to place substantial evidence in the record that common issues *predominate*." (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1108 (*Lockheed*).)  The " 'ultimate question' for predominance is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' " (*Duran v. U.S. Bank National Association* (2014) 59 Cal.4th 1, 28 (*Duran*), quoting *Collins v. Rocha* (1972) 7 Cal.3d 232, 238.)  " ' "As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages." ' " (*Duran, supra,* 59 Cal.4th at p. 28, quoting *Brinker*, *supra*, 53 Cal.4th at p. 1021-1022.)  In addition to finding predominance, the trial court "must also conclude that litigation of individual issues . . . can be managed fairly and efficiently." (*Duran* at pp. 28-29.)

"Predominance is a factual question; accordingly, the trial court's finding that common issues predominate generally is reviewed for substantial evidence.  [Citation.] We must '[p]resume[e] in favor of the certification order . . . the existence of every fact the trial court could reasonably deduce from the record. . . .' " (*Brinker*, *supra*, 53 Cal.4th at 1022, quoting *Sav-on, supra,* 34 Cal.4th at p. 329.)

2.      *Negligence*

The trial court concluded that plaintiff had failed to meet his burden to demonstrate that defendant's liability and the causal link between any breach by defendant and any damage suffered by the plaintiff could be established by common facts or evidence. ~(AA 205)~  Plaintiff argues that the court erroneously focused on the individual facts of each class member.  Plaintiff asserts that defendant was negligent

14

regardless of each class member's individual circumstances "because [defendant's] letter asserts, against the policy of the [LACSC] and what had actually been determined at the time the letter was sent, that those who had been cited were guilty (determined to owe money) and induced its recipients to pay by the undue demands and threats which were made, thus causing harm." He thus asserts that the "class had a right to be free from letters which were based on [defendant's] failure to know and take heed of [LACSC's] policy and the actual legal status that policy indicates."

The flaw in plaintiff's argument is that whether LACSC's red-light citation policies constitute common proof as to defendant's liability necessarily depends on the existence of a uniform policy with which defendant's letters did not comply. The trial court determined that plaintiff had failed to support his theory regarding LACSC's policy (and, by extension, defendant's liability). The court's finding is supported by the record, or more accurately, by the lack of substantial evidence from plaintiff. The sum total of plaintiff's evidence on this critical point is: (1) statements by Bochner in his declaration in support of class certification as to what LACSC's policies are (statements which mirror allegations in the complaint); (2) two small charts from LACSC labeled "Clerical Authority," which suggest that when a defendant fails to appear in a "photo enforcement" case, a failure to appear violation will not issue, and the DMV is not informed, but a $250 delinquency fee is assessed and the account is referred to collections; and (3) three news stories and unattributed notes of what a LACSC official stated regarding the court's policies.

As to the news stories and unattributed notes, it is not clear whether the trial court received these documents in evidence. As we have noted, Bochner attached these documents as exhibits to his supplemental brief and declaration in support of class certification. At the class certification hearing, defendant objected to the admission of these documents, remarking that defendant had "repeatedly objected" to these "press releases and . . . what has been submitted" by Bochner. Defense counsel noted that the court "has previously instructed Mr. Bochner not to make arguments concerning that, and

15

yet we're back here again arguing about that." The trial court did not rule on this objection at the hearing.

If the trial court did not admit these documents (i.e., the news stories and unattributed notes), then plaintiff's remaining evidence on this point (the "Clerical Authority" charts) did not support plaintiff's theory. The "Clerical Authority" charts do not address plaintiff's contention that LACSC does not issue default judgments in these cases or that various collection methods are not permitted. Assuming, however, the trial court admitted the news stories and unattributed notes, the trial court's order implicitly found that they, too, failed to support plaintiff's theory that defendant's liability could be based on LACSC's policies. (See *Lockheed, supra,* 29 Cal.4th at p. 1108 [stating that plaintiff's burden is to place "substantial evidence" in the record that common issues predominate].)[5] This implicit determination was not an abuse of discretion.

The trial court also found that whether defendant breached its duty or caused damage to class members would require individual inquiries. To determine whether a defendant owes a duty to a plaintiff for purposes of a negligence cause of action, a court is required to balance various factors which include " 'the foreseeability of harm to [plaintiff], the degree of certainty that the plaintiff suffered injury, [and] the closeness of the connection between the defendant's conduct and the injury suffered.' " (*Dept. of Fish*

---

[5] In concluding that plaintiff's theory was unsupported, the trial court carefully analyzed the evidence in support of plaintiff's allegations that it was "LACSC's policy . . . not [to] allow default judgments, liens, garnishment or levies with respect to red light camera violations and it does not report the citations to the DMV," and concluded that it was unsupported. "This theory is not supported by the evidence submitted in support of plaintiff's motion for class certification. Plaintiff relies *primarily* on evidence of two court procedures regarding the processing of red light camera citations. The first provides that, when a party receiving a red light camera citation fails to appear, the court clerk will add a $250 delinquency fee, send a Notice of Delinquency Letter and then refer the case to GCS for collections. The second provides that instead of notifying the DMV of the red light camera citee's failure to appear, a $250 civil assessment is imposed and the citation is referred to collections. The standing order further grants the court clerk authority to enter dismissals on red light camera citations when the issuing policy agency informs the court that the person cited was not the driver of the vehicle." (Emphasis added.)

*& Game v. Superior Court* (2011) 197 Cal.App.4th 1323, 1357, quoting *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650.) Foreseeability of harm is the key factor in this analysis. (*Dept. of Fish & Game v. Superior Court, supra,* 197 Cal.App.4th at p. 1357.) Whether defendant could reasonably foresee that its collection letter would cause damage to the class would turn on (1) whether the class member was, in fact, the driver of the car that was photographed running a red light and (2) what the defendant knew, or should have known, of those circumstances, and (3) what court proceedings had taken place on the citation. Plaintiff has not demonstrated how these issues could be determined through common proof.

Plaintiff argues that the trial court erred in rejecting his request to employ a class "notice" in which each class member would state whether she had received defendant's letter and read it. He contends this would have eliminated the need for individualized inquiries. The trial court found such a "notice" would serve as a mere "discovery questionnaire." The trial court did not abuse its discretion in rejecting such a device. While the proposed notice might help narrow the class, plaintiff has not demonstrated how this notice would obviate the need for individual inquiries to establish defendant's liability as to each class member.

For the first time on appeal, plaintiff argues that the trial court should have considered certifying an "issues only" or "liability only" class. This argument is waived because plaintiff did not raise either alternative before the trial court. (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11.) Conceding that he did not raise the argument below, plaintiff argues we should consider it anyway because it is a question of law and defendant would suffer no prejudice. We decline to do so. Trial courts are "ideally situated to evaluate the efficiencies and practicalities of permitting group action" (*Linder, supra,* 23 Cal.4th at p. 435), and we will not make that determination in the first instance.

In sum, the trial court did not abuse its discretion in determining that plaintiff failed to establish that common issues predominated over individual issues as to his negligence claim.

### 3. *Fraud and Negligent Misrepresentation*

The trial court denied class certification as to plaintiff's misrepresentation-based causes of action on the ground that plaintiff had not shown that either the falsity of many of defendants' representations or the class members' reliance on those representations were subject to common proof.

To prevail on a fraud claim, a plaintiff must demonstrate (1) a misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. (*Belasco v. Wells* (2015) 234 Cal.App.4th 409, 424 (*Belasco*).) "The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance." (*Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519 (*Cadlo*).) Accordingly, under both causes of action, plaintiffs must plead actual reliance on the alleged misrepresentation. (*Ibid.*)

We begin by addressing the trial court's reliance finding. Plaintiff argues that the putative class members' reliance should be presumed because the entire class was exposed to uniform misrepresentations contained in defendant's letter. Plaintiff is correct that in certain cases, reliance can be presumed on behalf of a class. For example, in *Vasquez v. Superior Court* (1971) 4 Cal.3d 800 (*Vasquez*), the Supreme Court addressed a fraud action where the defendant's salespeople "memorized a standard statement containing the representations (which in turn were based on a printed narrative and sales manual) and that this statement was recited by rote to every member of the class." (*Id.* at pp. 811-812.) In these circumstances, the court stated if "the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class." (*Id.* at p. 814; see also *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1094 [noting that reliance was a common issue in *Vasquez* based on the "peculiar facts of the case"]; *Occidental Land, Inc. v. Superior Court* (1976) 18 Cal.3d 355, 358 [finding inference of class-wide reliance where material misrepresentations were made in a public report and each class member had been "obligated to read the report and state in writing that he had done so."].) Similarly, in *Metowski v. Traid Corp.* (1972) 28 Cal.App.3d 332, the court addressed a situation where a putative class action

18

complaint alleged "19 identical misrepresentations were made in writing to each member of the class. If the representations were in fact made in writing to each member of the class, and plaintiffs thereupon entered into the contracts of purchase as alleged, then a persuasive inference of reliance upon the representations arises without the necessity of testimony on that issue from each individual member of the class." (*Id.* at p. 338.)

In contrast to these cases, courts have recognized that where "the issue of . . . reliance . . . is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action." (*Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 222 (*Tucker*).) Thus, in *Tucker*, plaintiff sought to represent a class of consumers alleging that a cellular phone service provider failed to disclose its practice of "rounding up" its customers partially used airtime minutes, reducing the number of minutes the customer could use. The court found that reliance could not be established on a class-wide basis because "the purported misrepresentations were communicated to class members through a variety of written materials, through the mail, via the Internet, by telephone and in retail stores." (*Tucker*, *supra*, 208 Cal.App.4th at p. 224.)[6] The court noted that it was not even clear if the members of the class had seen or relied on any of the alleged misrepresentations. (*Id.* at p. 221; see also *Davis-Miller v. Automobile Club of Southern California* (2011) 201 Cal.App.4th 106, 125 [holding no inference of class-wide reliance could be made where the evidence showed the alleged misrepresentations were made in a small number of places and thus likely did not reach most class members].) Similarly, in *Sotelo v.*

---

[6] Plaintiff argues that *Tucker* "did not speak as to the standard on class certification at all, as it was not based on a class certification motion." While plaintiff is correct that *Tucker* did not involve a class certification motion, its holding most certainly did speak to the class certification standard. *Tucker* involved an appeal after a trial court had sustained a demurrer on plaintiff's class allegations. A trial court can only sustain a demurrer on class allegations where it "concludes as a matter of law that, assuming the truth of the factual allegations in the complaint, there is no reasonable possibility that the requirements for class certification will be satisfied." (*Bridgeford v. Pacific Health Corp.* (2012) 202 Cal.App.4th 1034, 1041-1042.) Accordingly, the analysis in *Tucker* involved an application of the class certification standard, albeit in a distinct procedural posture.

19

*MediaNews Group, Inc.* (2012) 207 Cal.App.4th 639 (*Sotelo*), we found that a class member's reliance on representations in a contract could not be presumed; "although each putative class member . . . signed [the contract], reliance may not be presumed unless there is a showing that putative class members actually read their contracts." (*Id.* at p. 656.)

In this case, the trial court found that reliance could not be inferred because "[a] Class member who took any steps to dispute the asserted fine, paid a fine that was not actually owed or suffered any other damages, may have done so for any number of reasons. He may have relied on the red light letter from [defendant] but he may have also relied on [defendant's] other collection efforts or taken action in response to prior correspondence from LACSC." It thus concluded that "whether class members relied on the alleged misrepresentations in the red light letter requires consideration of individualized proof and is not a proper subject for determination on a class-wide basis."

Substantial evidence supports the trial court's finding. Although plaintiff has presented evidence that each putative class member received substantially similar letters from defendant, the record also suggests that putative class members received other communications that made direct demands for payment. For example, plaintiff submitted a copy of his "Notice of Traffic Violation" from the Culver City Police Department asserting that plaintiff had to "pay or deposit" $381 to LACSC for the charged violation. The Cole declaration reveals that defendant engages in collection efforts separate from the challenged letter, such as the use of different letters and collection phone calls. As Cole stated in his declaration, while defendant can determine whether an individual paid in full or in part, it cannot determine which communication caused the class member to pay. Any of these communications could have been the motivating force behind a class member's decision to pay the asserted balance. Because the record shows that many class members received a variety of targeted communications regarding their obligation to pay LACSC, we conclude that this is not a case where reliance can be presumed simply because each class member received the challenged letter. Rather, the variety of communications the class members received makes this a case where the issue of reliance

20

"is a matter that would vary from consumer to consumer" and thus is not subject to common proof (*Tucker*, *supra*, 208 Cal.App.4th at p. 222), and the trial court did not abuse its discretion in so finding.

The record also supports the trial court's finding that plaintiff had failed to show that the falsity of many of defendant's representations was subject to common proof. Defendant's representation that plaintiff had a balance owing to LACSC was false because of plaintiff's unique circumstances as an alleged victim of identity theft. As the trial court recognized, however, "whether other class members owed money to LACSC may be true if the person receiving the letter was the driver pictured in the citation and he had failed to appear and/or timely pay the citation." The court also concluded that plaintiff had failed to demonstrate that the alleged false representation that the DMV was helping to locate class members was subject to common proof. For the reasons discussed above in the context of plaintiff's negligence cause of action, these findings are supported by plaintiff's failure to present substantial evidence regarding LACSC's policies. Without evidence suggesting a common LACSC policy that rendered defendant's representations false or misleading as to the entire class, the question of falsity would necessarily turn on each individual's case.[7]

Substantial evidence thus supports the trial court's conclusion that reliance and falsity are not subject to common proof. Accordingly, the trial court did not abuse its discretion in denying plaintiff's motion to certify plaintiff's fraud and negligent misrepresentation causes of action.

---

[7] Plaintiff contends that the trial court ignored authority that a "technically true statement can be deceptive if it is couched in such a manner that it is likely to mislead or deceive," citing two cases, *Day v. AT&T* (1998) 63 Cal.App.4th 325 and *Massachusetts Mutual v. Superior Court* (2002) 97 Cal.App.4th 1282. Although a technically true statement can be misleading, this does not aid plaintiff because he failed to introduce sufficient evidence that the representations were made in a manner that was likely to mislead or deceive each class member, for the reasons discussed above.

21

### 4. *UCL*

Like plaintiff's fraud and misrepresentation claim, the trial court denied certification of plaintiff's UCL cause of action on the grounds that plaintiff had failed to introduce sufficient evidence that the falsity of defendant's representations and the class members' reliance on those representations were subject to common proof. On appeal, plaintiff contends that the trial court erred in its analysis because the UCL does not require a class plaintiff to present individualized evidence regarding class members' reliance.

A UCL action is equitable in nature and has limited remedies; prevailing plaintiffs are limited to injunctive relief and restitution. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 312 (*Tobacco II*).) The fraud-prong of the UCL has been understood as distinct from common law fraud. " 'A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim for injunctive relief' under the UCL." (*Ibid*, quoting *Day v. AT&T Corp., supra,* 63 Cal.App.4th at p. 332.) "A fraudulent practice under the UCL 'require[s] only a showing that members of the public are likely to be deceived' and 'can be shown even without allegations of actual deception, reasonable reliance and damage.' " (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 81, quoting *Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 838.)

While the scope of the UCL "remains expansive," in 2004, the California voters "materially curtailed the universe of those who may enforce [its] provisions" by enacting Proposition 64. (*Kwikset Corporation v. Superior Court* (2011) 51 Cal.4th 310, 320.) Proposition 64 limits private standing under the UCL to any " 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition." (*Ibid*, quoting Bus. & Prof. Code, § 17204.) In *Tobacco II*, the Supreme Court addressed the impact that Proposition 64's new standing requirement had on UCL class actions. *Tobacco II* was a class action brought by smokers against the tobacco companies alleging that the companies' marketing and advertising violated the UCL. After Proposition 64

was enacted, the trial court decertified the class, finding that each absent class member was now required to show that they suffered an injury in fact as a result of the alleged unfair competition. (*Tobacco II, supra,* 46 Cal.4th at p. 306.) The Supreme Court found decertification was improper. It held that Proposition 64 "was not intended to, and does not, impose [Business and Professions Code] section 17204's standing requirements on absent class members in a UCL class action where class requirements have otherwise been found to exist." (*Id.* at p. 324.) Thus, "relief under the UCL is available [to absent class members] without individualized proof of deception, reliance and injury" so long as the class representative meets Proposition 64 standing requirements. (*Id.* at p. 320, *see also Medrazo v. Honda of North Hollywood* (2012) 205 Cal.App.4th 1, 11 ["When the private action is brought as a class action, only the named plaintiff is required to meet this standing requirement."].)

Relying on *Tobacco II*, plaintiff here contends that the trial court erred in concluding that he needed to demonstrate that the class members' reliance was subject to common proof for purposes of the UCL cause of action. However, the trial court's finding on this ground finds support from a line of cases. For example, in *Cohen v. DIRECTV, Inc.* (2009) 178 Cal.App.4th 966 (*Cohen*), the court stated "*Tobacco II* held that, *for purposes of standing* in context of the class certification issue . . . involving the UCL, the class members need not be assessed for the element of reliance. Or, in other words, class certification may not be defeated *on the ground of lack of standing* upon a showing that class members did not rely on false advertising." (*Id.* at p. 981.) The court then found *Tobacco II* "irrelevant" to the question of commonality in the class certification context "because the issue of 'standing' simply is not the same thing as the issue of 'commonality.' " (*Ibid.*) The court thus concluded that the trial court correctly considered that the fact that plaintiff's UCL claim "would involve factual questions associated with their reliance on DIRECTV's alleged false representations" in denying certification. (*Ibid.*) Other decisions, such as *Tucker* (the decision on which the trial court here relied), have cited *Cohen*'s analysis approvingly. (*Tucker*, *supra*, 208

Cal.App.4th at pp. 227-228; *Knapp v. AT&T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 945.)

Plaintiff, however, cites dicta from in *In re Steroid Hormone Product Cases* (2010) 181 Cal.App.4th 145, to support his argument that proof of class-wide reliance is not necessary in the UCL context. There, the court discussed *Cohen*'s reasoning and stated "We agree that *Tobacco II* did not dispense with the commonality requirement for class certification. But to the extent the appellate court's opinion might be understood to hold that plaintiffs must show class members' reliance on the alleged misrepresentations under the UCL, we disagree. As *Tobacco II* made clear, Proposition 64 did not change the substantive law governing UCL claims, other than the standing requirements for the named plaintiffs, and 'before Proposition 64, "California courts have repeatedly held that relief under the UCL is available without individualized proof of deception, reliance and injury." [Citation.]' " (*Id.* at p. 158, quoting *Tobacco II*, *supra*, 46 Cal.4th at p. 326.) Other courts have similarly rejected *Cohen*'s reasoning. (See *Greenwood v. Compucredit Corp.* (N.D. Cal. 2010) 2010 WL 4807095 at p. *5 ["To the extent that the court of appeal's decision in *Cohen* might be read to require individualized evidence of class members' reliance, it is inconsistent with *Tobacco II*."].). Other courts have more generally recognized that the UCL does not require a showing of individualized proof of materiality, reliance, or damage. For example, in, *Weinstat v. Dentsply International, Inc.* (2010) 180 Cal.App.4th 1213, the court, in the standing context, held that the "trial court incorrectly believed that each class member must establish standing, thereby requiring the court to delve into individual proof of material, reliance and resulting damage." (*Id.* at p. 1224; see also *Pfizer Inc. v. Superior Court* (2010) 182 Cal.App.4th 622, 631 [noting that "relief under the UCL is available without individualized proof of deception, reliance and injury"].)

Ultimately, we do not need to address in this case whether, or to what extent, a plaintiff asserting a UCL claim on behalf of the class is required to demonstrate that reliance can be subject to common proof. As discussed below, the trial court did not abuse its discretion in finding that plaintiff's claims are not typical of the class and that

24

the class did not have adequate legal representation. These two grounds provide sufficient, independent grounds for affirming the trial court's order as to plaintiff's UCL claims. For the same reason, the trial court's failure to assess whether plaintiff's unfair-prong UCL claim should be certified does not require reversal.

### 5. *Declaratory Relief*

Plaintiffs' fourth cause of action asserted a claim for declaratory relief. This cause of action sought two different declarations. First, plaintiff sought a declaration that "it is negligent or either a negligent or intentional misrepresentation for Defendants to suggest and seek response in light of actual lack of facts supporting an obligation due and owing and to suggest associations with the DMV that it does not have and that it may not do so in the future." Second, plaintiff sought a "declaration of rights and duties regarding whether Defendants were debt collecting under the Rosenthal Fair Debt Collection Practices Act [RFDCPA]." Plaintiff sought this latter declaration because defendant had "raised the issue . . . whether they have certain defenses under the [RFDCPA] and therefore the issue of whether they were debt collecting when they sent the letter in question herein." Plaintiff alleged that "[i]f so, it appears Defendants violated certain notice provisions under the [RFDCPA] . . . . If not, they have no such defenses." Plaintiff did not assert a cause of action under the RFDCPA or seek a declaration that defendant had, in fact, violated RFDCPA provisions.

In addressing this claim, the trial court noted defendant's position that plaintiff had failed to properly seek class certification of this claim and defendant's request to file a supplemental brief if the court were to consider class certification nonetheless. The court found that further briefing was unnecessary because the "court has ultimately determined that certification of all causes of action is improper under the circumstances of this case." Nevertheless, the court addressed the merits of whether plaintiff had shown that common issues predominated as to the declaratory relief cause of action. To the extent that plaintiff sought a declaration that defendant was negligent or had engaged in misrepresentations, the trial court found that "[a]s with plaintiff's negligence and misrepresentation claims, common issues do not predominate because resolution of these

25

questions necessarily requires individualized inquiries." The trial court, however, found that plaintiff had "submitted sufficient evidence to show that common issues predominate in determining whether GCS is a 'debt collector' as defined by the Act and whether its actions—the representations in the red light letter – were consistent with the Act."

Defendant has not filed a cross-appeal regarding the trial court's finding that common issues predominate as to whether it is a "debt collector" within the meaning of the RFDCPA, so we do not reach this issue. Plaintiff, on the other hand, has argued that the trial court erred in failing to certify the declaratory judgment cause of action in its entirety because predominance need not be shown for a declaratory judgment action. While plaintiff raised this argument in his reply brief before the trial court, the trial court never addressed it. Plaintiff's argument, however, is without merit.

Plaintiff relies entirely on Federal Rule of Civil Procedure 23(b)(2) (Rule 23(b)(2)). Rule 23(b)(2) permits class certification in federal court where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." (Rule. 23(b)(2).) The United States Supreme Court has held that the "key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.' [Citation.]" (*Wal-Mart Stores, Inc. v . Dukes* (2011) ___ U.S. ___, [131 S.Ct. 2541, 2557] (*Wal-Mart*).) The court further noted that " '[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples' of what (b)(2) is meant to capture. [Citation.] In particular, the Rule reflects a series of decisions involving challenges to racial segregation—conduct that was remedied by a single classwide order." (*Id.* at pp. 2557-2558.) Where a Rule 23(b)(2) class is asserted, the predominance and superiority requirements of Rule 23(b)(3) need not be met. (See, e.g., *Gates v. Rohm & Haas Co.* (3d Cir. 2011) 655 F.3d 255, 263-264.)

Plaintiff has failed to cite any California state court case that relies on Rule 23(b)(2) to permit class certification without a showing that common issues predominate,

and we have found none.[8]  Plaintiff cites the general proposition that California courts "have sought guidance from both Civil Code section 1781 regarding consumer class actions and the Federal Rules of Civil Procedure, rule 23, in the absence of state precedent." (*Reyes v. Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1271.)  As detailed above, however, there is state precedent on the predominance requirement.  Our Supreme Court has expressly interpreted the "common . . . interest" requirement of Code of Civil Procedure section 382 as requiring "predominant common questions of law or fact." (*Brinker*, *supra*, 53 Cal.4th at p. 1021.)  Additionally, Civil Code section 1781, referenced by the *Reyes* court, permits class actions only where "questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members." (Civ. Code, § 1781, subd. (b)(2).)  In *Capitol People First v. Department of Developmental Services* (2007) 155 Cal.App.4th 676 (*Capitol People First*), a case cited by plaintiff, the court found that the trial court had correctly looked to Rule 23(b)(2) for guidance on whether plaintiffs' disability discrimination claims were suitable for class treatment. (*Id.* at p. 691, fn.12.)  The court nonetheless recognized that "[i]t is the burden of the proponent of class certification to show, with substantial evidence, that common questions of law or fact predominate over questions affecting individual members." (*Id.* at p. 689.)  Accordingly, we question whether California law permits a court to ignore the predominance requirement in assessing a class certification motion.

However, even assuming plaintiff is correct, plaintiff has not established that his claims satisfy the Rule 23(b)(2) standard for certification.  For the reasons discussed above, plaintiff failed to produce sufficient evidence demonstrating that defendant "acted or refused to act on grounds generally applicable to the class" such that class wide

---

[8] While California courts have utilized Rule 23(b)(2), for example, in determining whether notice to the putative class and an opportunity to opt-out of the class must be provided, these decisions are silent as to whether or not predominance must be shown for such class actions in California state court.  (See, e.g., *Carter v. City of Los Angeles* (2014) 224 Cal.App.4th 808, 823; *Frazier v. City of Richmond* (1986) 184 Cal.App.3d 1491; *Bell v. American Title Ins. Co.* (1991) 226 Cal.App.3d 1589.)

27

injunctive or declaratory relief was appropriate. (*Capitol People First, supra,* 155 Cal.App.4th at p. 691.) Specifically, plaintiff failed to introduce evidence that defendant's liability could be established through class wide proof, as opposed to an individualized determination of each class member's circumstances or what defendant knew, or should have known, about those circumstances. Thus, based on the record plaintiff established before the trial court, it does not appear that defendant's conduct is such that it can be "declared unlawful only as to all of the class members or as to none of them." (*Wal-Mart, supra,* 131 S.Ct. at p. 2557.)

Accordingly, the trial court did not abuse its discretion in finding that common questions did not predominate to the extent that plaintiff's declaratory relief cause of action sought a declaration that defendant had been negligent or engaged in misrepresentations.[9]

B.     *Typicality*

The trial court found that plaintiff's negligence or misrepresentation claims were not typical of the class as he was neither the driver nor owner of the car subject to the red-light citation and had received the defendant's letter as the result of his identity being stolen. On appeal, plaintiff argues that "[h]e is typical of others who were given a letter which concealed and threatened with falsities the true status of the citations and the consequences of not immediately paying them."

"Certification requires a showing that the class representative has claims or defenses typical of the class." (*Fireside Bank*, *supra*, 40 Cal.4th at p. 1090.) " 'It is the fact that the class plaintiff's claims are typical and his representation of the class adequate which gives legitimacy to permitting him to bind class members who have notice of the action.' " (*Caro*, *supra*, 18 Cal.App.4th at p. 664, quoting *Trotsky v. Los Angeles Fed.*

---

[9] Our holding applies equally to plaintiff's requests for injunctive relief to the extent they are pled in his substantive causes of action. While the trial court did not separately address his requests for injunctive relief in each of his substantive claims, in light of our holding, the trial court's finding that common issues did not predominate as to the negligence and misrepresentation causes of action was also sufficient to deny certification as to the claims for injunctive relief.

28

*Sav. & Loan Assn.* (1975) 48 Cal.App.3d 134, 146.) Typicality does not require a showing that plaintiffs' claims are identical to those of other class members, only that their claims are sufficiently similar. (See *Classen v. Weller* (1983) 145 Cal.App.3d 27, 46.) " '[T]here can be no class certification unless it is determined by the trial court that similarly situated persons have sustained damage. There can be no cognizable class unless it is first determined that members who make up the class have sustained the same or similar damage.' " (*Caro, supra,* 18 Cal.4th at p. 664, quoting *Guidotti v. County of Yolo* (1989) 214 Cal.App.3d 1552, 1566-1567.)

On this record, substantial evidence supports the trial court's conclusion that plaintiff's claims were not typical of the proposed class. "Although difference in computing damages is not sufficient to deny class certification, differences in the actual existence of damages or in the manner of incurring damages are appropriate considerations." (*Caro*, *supra*, 18 Cal.App.4th at p. 665.) In *Caro*, a plaintiff sought to represent a class of consumers who had been misled by defendant's claim that its orange juice was "fresh." Plaintiff's evidence, however, suggested that plaintiff was not deceived by the "fresh" claim, but rather had been misled by defendant's claim that the juice was "premium." (*Id.* at p. 664.) The court affirmed the denial of class certification, stating "[b]ecause Caro did not claim to be misled in the manner the class was allegedly deceived, the court could not 'decide the issue of the rights of such individuals that might possibly exist.' [Citation.]" (*Ibid.*) In this case, when plaintiff received defendant's letter, he knew he had not been in Southern California in over seven years and that he had never received any citation there. He therefore knew that he did not owe money to LACSC. Further, he knew he was the victim of identity theft and had reason to suspect that this was the reason he had received defendant's letter. As a result, while plaintiff alleges that the class members were misled into paying the balance listed in defendant's letter, plaintiff himself was not misled in this way. Therefore, plaintiff's manner of

incurring damages (retaining an attorney to send a letter to defendant stating that he was an identity theft victim) is distinct from those of the putative class.[10]

The trial court did not abuse its discretion in finding that plaintiff's claims were not typical of the class.[11]

C.    *Adequacy of Representation*

The trial court concluded that plaintiff failed to meet his burden of showing that his counsel, Ron Bochner, was qualified to serve as class counsel. On appeal, plaintiff contends that Bochner's qualifications were sufficiently established and that a prior finding in an unrelated matter that Bochner engaged in questionable litigation tactics did not support a finding that Bochner was unqualified to serve as class counsel in this action.

---

[10] We note that plaintiff's fraud and negligent misrepresentation causes of action both require a finding that the class member reasonably relied on an alleged misrepresentation. (*Belasco*, *supra*, 234 Cal.App.4th at p. 424; *Cadlo*, *supra*, 125 Cal.App.4th at p. 519.) " 'Several courts have held that class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.' " (*Seastrom v. Neways, Inc.* (2007) 149 Cal.App.4th 1496, 1502.) Because plaintiff knew he had been the victim of identity theft and knew he did not owe a fine, it appears plaintiff may be subject to a reliance defense that is "unavailable or less available against other class members." (*Id.* at p. 1503.) We need not address whether defendant's reliance defense against plaintiff would warrant denial of certification in light of our conclusion that plaintiff has not established he was misled in the way the unnamed class members were allegedly misled.

[11] As we have stated, plaintiff's declaratory relief claim involved two separate prongs—one seeking a declaration that defendant engaged in negligence or misrepresentations by sending the letter and one seeking a declaration that defendant was engaged in debt collecting under the RFDCPA. As to the latter prong, the trial court found plaintiff's claims were "typical of other plaintiffs under the debt collection prong of his declaratory relief cause of action because he received the same type of letter as all other asserted class members." Plaintiff contends that if his claims were typical under the RFDCPA prong of his declaratory relief claim, they are typical as to the other prong as well: "whether [defendant's] letter was legally appropriate or subject to the RFDCPA – are not readily distinguishable. It appears if he was typical for the one he was typical for the other." Because we find in the following section that plaintiff failed to meet his burden to establish the adequacy of his representation, we need not address this argument.

In the alternative, plaintiff argues that the trial court should have appointed replacement class counsel, rather than denying certification of the entire class.

"In order for the representative to adequately represent the class, the representative's attorney must be qualified, experienced and generally able to conduct the proposed litigation." (*Miller v. Woods* (1983) 148 Cal.App.3d 862, 874; see also *McGhee v. Bank of America* (1976) 60 Cal.App.3d 442, 450 ["Adequacy of representation depends on whether the plaintiff's attorney is qualified to conduct the proposed litigation . . . ."].) " '[T]he Court has an obligation to closely scrutinize the qualifications of counsel to assure that all interests, including those of as yet unnamed plaintiffs are adequately represented. . . . Precisely because of the responsibility to absent class members, counsel's qualifications in the class action context are subject to a 'heightened standard.' " (*Cal Pak Delivery, Inc. v. United Parcel Service, Inc.* (1997) 52 Cal.App.4th 1, 12 (*Cal Pak*), quoting *Palumbo v. Tele-Communications, Inc.* (D.D.C. 1994) 157 F.R.D. 129, 132-133.)

To begin, plaintiff argues on appeal that the "existence of the elements of adequate representation are presumed" and that the " 'burden is on the defendant to demonstrate that the representation will be inadequate.' " Plaintiff relies on a single case for this proposition—the 1984 decision by the federal district court in *In re School Asbestos Litigation* (E.D. Pa. 1984) 104 F.R.D. 422, 430, afirmed in part, reversed in part (3d Cir.) 789 F.2d 996.[12] However, our Supreme Court has squarely held that "[t]he party seeking

[12] *In re School Asbestos Litigation* does not appear to be an accurate statement of federal law. The decision relied on the Third Circuit's decision in *Lewis v. Curtis* (3d Cir. 1982) 671 F.2d 779. *Lewis*, however, was addressing class certification in a shareholder derivative action brought pursuant to Federal Rule of Civil Procedure 23.1. (*Id.* at p. 784.) Federal decisions recognize that " '[i]n the context of a derivative suit under Rule 23.1, courts have generally found that the defendant has the burden of showing that the plaintiff is an inadequate representative.' " (*In re Facebook, Inc. IPO Securities & Derivative Litigation* (S.D.N.Y. 2013) 2013 WL 6798160 at p. *24, quoting *In re JPMorgan Chase & Co. Shareholder Derivative Litigation* (S.D.N.Y. 2008) 2008 WL 4298588 at p. *8.) For non-derivative class actions governed by Federal Rule of Civil Procedure 23, however, plaintiffs bear the burden of establishing the adequacy of the class representative. (See, e.g., *Rattray v. Woodbury County, IA* (8th Cir. 2010) 614

class certification has the burden of proving the adequacy of its representation." (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470.) Similarly, in *Sotelo*, this court held that "[i]t is plaintiff's burden to support each of the above factors [including adequacy of the class representative] with a factual showing." (*Sotelo*, *supra*, 207 Cal.App.4th at p. 647.) Accordingly, plaintiff bore the burden of establishing Bochner's adequacy as class counsel; defendant did not have to prove Bochner's inadequacy.

Nor are we persuaded by plaintiff's argument that Bochner's qualifications should simply have been "presumed." Such a presumption is inconsistent with plaintiff's burden to introduce sufficient evidence regarding adequacy of representation and this court's obligation to "closely scrutinize" the qualifications of putative class counsel. (See *Cal Pak*, *supra*, 52 Cal.App.4th at p. 12; see also *Berger v. Compaq Computer Corp.* (5th Cir. 2001) 257 F.3d 475, 481 ["The district court unquestionably adopted an incorrect legal standard by stating that '[t]he adequacy of the putative representatives and of plaintiffs' counsel is presumed in the absence of specific proof to the contrary.' This is error; the party seeking certification bears the burden of establishing that *all* requirements of Rule 23(a) have been satisfied."].)

The trial court expressed valid concerns about Bochner's qualifications to represent a class of more than 22,500 people. All Bochner stated in his declaration regarding his experience, qualifications and ability to represent such a large class was: "I am experienced in complex litigation. I have been named class counsel in eight cases, all of which settled or are in the process of settling, with money being distributed to the class and two other cases which are pending but have not been certified to date." This description fails to provide any qualitative information about Bochner's experience or ability to conduct this litigation. He did not describe the size of the classes, the nature of the litigation, or any information that would have permitted the trial court to assess whether Bochner had the qualifications and experience necessary to represent the

F.3d 831, 835; *Wixon v. Wyndham Resort Development Corp.* (N.D.Cal. 2009) 2009 WL 3353445 at pp. *5, 9.)

potentially large class in this case.  A well-known treatise advises attorneys on this subject:  "This is not the time to be modest about yourself.  As part of your certification motion, attach a résumé of your firm and each attorney who will be involved in the action.  Detail your experience in prior class action litigation, indicating past cases in which you were involved, in what capacity, and the results obtained.  At fairness hearings and hearings involving fee applications, judges occasionally will praise class counsel on the record.  Save any such transcripts and orders and quote these remarks in later motions as support for the proposition that class counsel is adequate."  (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2011) ¶ 14:38.1.)  By contrast, where, as here, putative class counsel provides almost no details about their relevant experience, they run the risk that the trial court will find them inadequate.[13]

The trial court's concern about whether Bochner had the resources or capacity to adequately serve as counsel for such a large class also finds support in the record.  First, Bochner stated in his declaration that he was serving as class counsel in two putative class actions.  Bochner's declaration, however, includes no statement regarding his capacity to handle a large class action in light of those pending cases and his status as a solo practitioner.  Second, Bochner's failure to timely pursue plaintiff's claims or discovery against LACSC in this matter calls into question Bochner's capacity to diligently represent the class.  This lawsuit was filed in July 2011 and plaintiff amended his complaint four times.  Yet plaintiff waited until December 2012 to add LACSC as a party to the case.  Three months later, the trial court granted LACSC's demurrer without leave to amend because plaintiff had failed to file a timely claim pursuant to the Government Tort Claims Act.  Further, class discovery opened in April 2012.  Bochner, however, did not propound a subpoena to LACSC until July 2012 seeking documents on

---

[13] Nor can it be said that the trial court's concerns regarding Bochner's resources or qualifications caught Bochner by surprise.  The court issued a detailed tentative ruling expressing its concerns regarding Bochner's suitability as class counsel.  Even after being made aware of these concerns, however, Bochner failed to expand on his declaration's meager showing at the class certification hearing.

LACSC's red-light citation policies. When this did not yield sufficient information, plaintiff attempted to depose an LACSC official to have him or her confirm certain statements county officials had made to the press regarding LACSC's red-light citation policies. Bochner did not issue a deposition subpoena, however, until May 17, 2013 (10 days before his reply brief in support of certification was filed). LACSC objected to this subpoena as it failed to include a check to cover their expenses, so plaintiff issued a second subpoena on July 8, 2013, noticing a deposition for August 12, 2013—a mere eight days before the class certification hearing. It was not until September 9, 2013, that Bochner filed a motion to compel LACSC's appearance at a deposition.

Our decision should not be read as holding that a solo practitioner can never serve as adequate class counsel, including in complex or large class actions. Rather, we hold that given Bochner's performance in this action as well as his failure to establish his qualifications before the trial court, substantial evidence supports the trial court's conclusion that Bochner was not qualified to serve as class counsel in this case.

Plaintiff next argues that the trial court erred in finding Bochner an inadequate class counsel based on the *American Agencies* court decision. Plaintiff contends that the standard for finding inadequate class counsel based on an ethical challenge was not satisfied. He relies on the Seventh Circuit's decision in *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.* (7th Cir. 2013) 704 F.3d 489. In that case, the court inquired into the nature of misconduct by an attorney in a class action warranting denial of class certification. The court noted that "[n]ot any ethical breach justifies the grave option of denying class certification. No doubt, misconduct that prejudices the class or creates a direct conflict between counsel and the class requires such denial . . . . [¶] Nevertheless, even 'serious' or 'major' ethical violations – not prejudicial to the class – can require denial of class certification." (*Id.* at pp. 498-499.) The court articulated the following standard: "unethical conduct, not necessarily prejudicial to the class, nevertheless raises a 'serious doubt' about the adequacy of class counsel when the misconduct jeopardizes the court's ability to reach a just and proper outcome in the case." (*Id.* at p. 499.)

Plaintiff argues that there "were no facts and no finding that [Bochner's] representation of the class would lead to an inability to reach a just and proper outcome in this case" and, therefore, the "court's denial of certification . . . on this basis appears to be based on an erroneous assumption or improper criteria." Plaintiff misreads the trial court's order. After finding Bochner's declaration regarding his qualifications inadequate for the reasons discussed above, the court stated: "In light of these facts, the court finds that plaintiff has not met his burden of showing Mr. Bochner is qualified to represent the proposed class. [¶] Even if plaintiff had met his burden, the court is concerned with counsel's competence to represent the proposed class in light of the findings of Judge Brick in . . . the *Lee v. American Agencies* case." It is thus clear that plaintiff's failure to establish Bochner's qualification was the reason the trial court found Bochner to be inadequate—not solely or necessarily Bochner's actions in the *American Agencies* case. As just discussed, this decision was not an abuse of discretion. (*Linder*, *supra*, 23 Cal.4th at p. 436 [" 'Any valid pertinent reason stated will be sufficient to uphold the order.' "].) Further, we reject plaintiff's contention that the trial court erred by considering Bochner's performance in the *American Agencies* case. Even if not sufficiently serious to warrant disqualification of counsel, bad faith or dubious litigation tactics by class counsel can jeopardize class members' claims. It was therefore not unreasonable for the trial court to conclude that prior findings by two courts that Bochner had engaged in such tactics cast doubt on his ability to "competently represent the class."[14]

---

[14] Bochner has requested we take judicial notice of three documents that he contends relate to the finding by the *American Agencies* court that he engaged in bad faith litigation tactics. We grant the request for judicial notice of the Court of Appeal decision that reversed the trial court's award of attorneys' fees. The trial court cited this decision in its order in this case. (See Evid. Code, § 452, subd. (d)(1).) We deny the request to take judicial notice of discovery responses Bochner received in the *American Agencies* case, and a superior court order overruling a demurrer in another of Bochner's cases. Bochner contends that these two documents are relevant to show that he did not engage in "dubious litigation tactics" in the *American Agencies* case. We decline Bochner's invitation to relitigate Judge Brick's findings or the Court of Appeal's decision regarding his litigation tactics. (*Jordan v. Superstar Sandcars* (2010) 182 Cal.App.4th

Plaintiff's final argument is that the trial court should have given him the opportunity to locate adequate counsel, rather than denying certification. As plaintiff's cited authority makes clear, however, trial courts have "wide discretion to determine the remedial consequences" where class counsel is inadequate, and courts "may deny certification outright." (1 Newberg on Class Actions (5th ed. 2011) § 3.87, pp. 436-437.) There are a number of examples of federal courts denying class certification solely based on the inadequacy of class counsel. (See, e.g., *Gomez v. St. Vincent Health, Inc.* (7th Cir. 2011) 649 F.3d 583, 592 [affirming class certification denial based solely on inadequacy of putative class counsel]; *Niemeyer v. Williams* (C.D. Ill. 2012) 910 F.Supp.2d 1116, 1132 ["The inadequacy of class counsel can alone be grounds to deny certification of a class."]; *Buckland v. Maxim Healthcare Services, Inc.* (C.D. Cal. 2012) 2012 WL 3705263 at p. *8 ["[B]ecause the Court concludes that Counsel are inadequate, the Court DENIES Plaintiffs' Motion with respect to the Recruiter Class."].)

Plaintiff (and Bochner) were on notice that defendant challenged Bochner's ability to serve as class counsel. In its opposition brief to the motion for class certification, defendant referenced the superior court's findings in the *American Agencies* case and argued that "[t]he conduct documented by the [*American Agencies*] court casts substantial doubt on whether Attorney Bochner can effectively conduct this litigation and protect the proposed class's interest. As a result, the Court should deny the motion for class certification." In his reply brief, plaintiff responded to this argument, but did not raise the possibility that alternative counsel could be appointed to represent the class. It was not until the class certification hearing on August 20, 2013, that Bochner raised the possibility that he could locate replacement counsel if the court determined he was inadequate. Even then, however, Bochner did not identify replacement counsel or indicate whether anyone was actually ready, willing, and able to step into the case which

1416, 1421, fn. 2 [denying request to take judicial notice of documents not before the trial court at the time it made its ruling].)

36

had been pending since 2011.  In these circumstances, the trial court did not abuse its discretion in denying certification outright.

D.    *Substantial Benefit*

As a final basis for denying class certification, the trial court found that a "class action is not the superior method of obtaining relief where proposed class counsel is not qualified and only a declaratory relief allegation, which may not provide complete relief to the class, appears to qualify for class treatment."  Plaintiff argues that the trial court abused its discretion in making this finding because plaintiff is, in fact, an adequate representative and because he intends "to pursue all RFDCPA remedies based on the declaratory relief" cause of action.

"In determining the superiority of class treatment, the trial court must weigh the respective benefits and burdens of class litigation; maintenance of the class action will only be permitted where substantial benefits accrue to both the litigants and the court." (*Soderstedt v. CBIZ Southern California, LLC* (2011) 197 Cal.App.4th 133, 156.) Substantial evidence supports the trial court's finding that plaintiff had failed to meet his burden of demonstrating that class treatment of his claims would provide a substantial benefit to the parties and the court.  The only claim that survived the trial court's commonality and typicality findings (findings which we have now affirmed) was a declaratory relief action seeking a declaration that defendant was engaged in debt collection.  Plaintiffs' complaint, however, sought this declaration only to address a potential defense the defendant had raised in support of its demurrer to plaintiff's complaint.  Relief on such a narrow ground for the class would hardly constitute a "substantial benefit."  Nor can we say that class members would benefit at all from having their claim advanced by an inadequate representative.

Plaintiff asserts in his brief that he "does intend to pursue all RFDCPA remedies based on the declaratory relief, just as stated in the [Fourth Amended Complaint]." However, his fourth amended complaint asserts no causes of action under the RFDCPA, nor does it seek a declaration that defendant violated the RFDCPA.  Rather, in the complaint, plaintiff "seeks a declaration of rights and duties regarding whether

37

Defendants were debt collecting under the [RFDCPA]. If so, it appears Defendants violated certain notice provisions under the Act . . . . If not, they have no such defenses." It was not until the class certification hearing that plaintiff indicated his desire to amend his complaint for a fifth time to assert these causes of action. Plaintiff renews this request before us, requesting in his opening brief that "if the court reverses on the adequacy issue, leave to amend to name RFDCPA causes be allowed." Plaintiff's belated requests for leave to amend confirm the trial court's finding that plaintiff's declaratory relief cause of action, as currently pled, would fail to provide complete relief to the class.

E.       *Staying the Class Certification Hearing Pending Discovery*

As we have discussed, substantial evidence supports the trial court's finding that plaintiff failed to show that defendant's liability could be established through common proof of LACSC's policies. Plaintiff contends on appeal that LACSC failed to cooperate with a deposition subpoena that sought to have a LACSC official testify regarding LACSC's red-light camera citation policies. Plaintiff argues that if the evidence regarding LACSC's policies was inadequate for class certification purposes, the trial court should have deferred ruling on his certification motion, rather than denying it.

To begin, plaintiff fails to properly raise this argument in his opening brief. His entire argument on this point consists of a two-sentence paragraph entirely devoid of citations to the record or applicable legal authority. "Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived." (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.) Given plaintiffs' failure to provide even a modicum of support in the record or case law for his position that the trial court should have continued the class certification hearing, we deem this argument waived.

However, even considering plaintiff's arguments on the merits, we find no abuse of discretion. "The decision to grant or deny a continuance is committed to the sound discretion of the trial court." (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984.) We will not disturb the court's ruling in the absence of a clear abuse of the court's discretion. (*Ibid.*) The burden is on the party seeking a continuance to permit additional discovery to

38

make the request. Where a party fails to request that a motion be continued to allow for additional discovery, the party waives any objection to the court ruling on the motion. (*Lewinter v. Genmar Industries, Inc.* (1994) 26 Cal.App.4th 1214, 1224 (*Lewinter*), see also *Jun Ki Kim v. True Church Members of Holy Hill Community Church* (2015) 236 Cal.App.4th 1435, 1450 ["[A]ppellants waived their ability to argue they suffered prejudice because the record does not contain evidence they requested additional discovery or asked the court for additional time to conduct discovery about the recent events."].)

Plaintiff never unequivocally requested that the trial court continue the class certification briefing or hearing to permit him to conduct additional class discovery. Class discovery in this matter opened on April 26, 2012. Plaintiff filed his certification motion on September 28, 2012, without referencing any issues regarding LACSC discovery. In his reply brief, filed May 28, 2013, plaintiff first noted LACSC's refusal to comply with a deposition subpoena and stated that if the "*court desires* further evidence on [LACSC's] practices and policies, plaintiff asks leave to supplement this brief and produce that evidence." (Emphasis added.) Similarly, in his August 13, 2013, supplemental brief, plaintiff asked that "*if the certification of the class turns on evidence* that may be provided by LASC, the court allow the certification hearing to be continued to such time as plaintiff is able to obtain such evidence." (Emphasis added.) Plaintiff never indicated his belief that further discovery was necessary; rather, he requested that the court continue the class certification hearing only if the court determined further evidence was needed.

At the class certification hearing, plaintiff again failed to make any request for a continuance of the hearing or the court's ruling. By this time, plaintiff had received the court's lengthy and detailed tentative ruling and was aware of its reasoning and findings that plaintiff had failed to meet his burden to demonstrate that class certification was warranted. Despite this fact, plaintiff did not request that the court delay its ruling until further discovery on LACSC's policies could be completed. Rather, after reiterating his attempts to obtain discovery from LACSC, Bochner simply stated: "We've tried every

39

which way to get [LACSC] to cooperate, and they're not cooperating. So regardless of whether this motion is granted or not granted, there is going to be a motion to compel them to appear . . . at deposition [sic] and to explain themselves." Accordingly, plaintiff waived any objection to the trial court's failure to defer ruling on plaintiff's class certification motion. (*Lewinter*, *supra*, 26 Cal.App.4th at p. 1224.)

Even liberally construing the record to find that plaintiff requested a continuance to permit additional discovery, we hold the trial court did not abuse its discretion in implicitly denying this request. (*Combs v. Skyriver Communications, Inc.* (2008) 159 Cal.App.4th 1242, 1270 [affirming trial court's implicit denial of a request for continuance by ruling on the underlying summary judgment motion].)[15] As just detailed, plaintiff waited until August 13, 2013—16 months after discovery opened, 3 months after his reply brief in support of class certification was filed, and a mere one week before the class certification hearing—to make, at best, an equivocal request for a continuance of the certification hearing. In these circumstances, the trial court did not err in implicitly denying plaintiff's continuance request.

## DISPOSITION

The order denying class certification is affirmed.

---

[15] In its order denying class certification, the trial court referenced Bochner's statements that he had been attempting to depose LACSC. In discussing whether the falsity of the statements could be determined by common proof, the court stated: "With respect to the statement that GCS might employ alternate means of collection . . . plaintiff suggests in supplemental papers filed on August 13, 2013, that he has attempted, but has been unsuccessful to date, in getting testimony from the LACSC on this issue. It is unnecessary to resolve this issue because, even if plaintiff had evidence that LACSC had a policy against employing these alternate means of collection, plaintiff has failed to show that the other elements of the misrepresentation claims may be established by common facts and/or evidence." Nowhere, however, did the trial court expressly construe Bochner's statements as a request for a continuance.

40

_____

Miller, J.

We concur:

_____

Kline, P.J.

_____

Stewart, J.

A140351, *Howard v. G.C. Services*

41